Philip A. XAPHES, Plaintiff,

v.

SHEARSON, HAYDEN, STONE, INC.,
et al., Defendants.

No. 80–6348–CIV–JAG.

United States District Court,
S. D. Florida, N. D.

Feb. 23, 1981.

Richard H. Critchlow, Tew, Critchlow, Sonberg, Traum & Friedbauer, Miami, Fla., for plaintiff.

Robert M. Sondak, Paul, Landy, Beiley & Harper, P. A., Miami, Fla., for defendants.

## ORDER

GONZALEZ, District Judge.

THIS CAUSE came on to be heard upon the Defendants' Motion to Dismiss this two count complaint on the following grounds: (1) Failure to state a claim for relief in that the equitable defense of *in pari delicto* bars recovery; (2) Failure to satisfy the requirements of Fed.R.Civ.P. 9(b) in that fraud is not plead with particularity; (3) Failure to satisfy Fed.R.Civ.P. 8(a) in that the complaint does not connect the defendants with the alleged illegal scheme; (4) Failure to plead the elements necessary for recovery under an implied private cause of action pertaining to Section 10(b) and Rule 10b–5 thereunder; and (5) Failure of Count II to plead compliance with the "tender" requirements of Chapter 517, Florida Statutes (now amended to exclude such requirements).

Count I herein seeks recovery for alleged violations by defendants' account representative, Robert Becker, of Section 10(b) of the 1934 Securities Exchange Act and Rule 10b–5 thereunder, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b–5. Becker allegedly induced plaintiff to open a margin account with Shearson.[1] After the transfer of plaintiff's "blue chip" stocks into the margin account, Becker allegedly induced plaintiff to liquidate certain of these securities for the purchase of others as to which Becker represented he possessed "inside information". Relying on Becker's "inside information" plaintiff purchased various stocks on thirteen different occasions between February, 1977 and April, 1979.

Becker's representations that he possessed "inside information" were allegedly false, as the companies in question were never subject to takeover bids, nor was a takeover ever consummated.

Defendants' first ground for dismissal raises the equitable defense of *in pari delicto* and seeks dismissal under that theory as a matter of law.

Two Fifth Circuit cases recognize the defense of *in pari delicto* as precluding a *"tippee"*[2] from recovering against an *"insider"*[3] who gave inside information that

1. Shearson, Hayden, Stone, Inc. and Shearson, Loeb, Rhoades, Inc. its successor through merger are the two named defendants.

2. The word "tippee" was initially coined by Professor Loss in III Loss, Securities Regulation 1451 (2d ed.) and subsequently applied in the case law surrounding the subject. The word "tippee" refers to persons who trade in shares of stock of a corporation upon receiving material, inside information about the company from "insiders". 69 Am.Jur.2d *Securities Regulation-Federal* § 518 (1973).

   "Tippees" like "insiders" come in many varieties: first generation "tippees" who for example obtain their tip from a close friend who is a director or other form of insider to a corporation to which the tip relates; second generation "tippees" to whom are repeated a casual remark made by a corporate insider to an acquaintance of such "tippee". Furthermore, all "tippees" are not liable to the same degree for using the information so received. *Id.* The causal chain must not be stretched too far.

3. Corporate "insiders" are defined as those persons who by reason of their positions and special relationships with the corporation have access to information not available to those with whom they are dealing. Traditionally, "insid-

later proved to be incorrect. *Kuehnert v. Texstar Corporation*, 412 F.2d 700 (5th Cir. 1969). *James v. DuBreuil*, 500 F.2d 155 (5th Cir. 1974). The Court in *Kuehnert*, as a matter of discretion and policy, refused to act as a referee in an accounting between or among coconspirators deeming it not to be the function of a court of equity to decide which coconspirator "out-conspired" the other. *Ford v. Caspers*, 42 F.Supp. 994 (N.D.Ill.1941), *aff'd*, 128 F.2d 884 (7th Cir. 1942); *James*, 500 F.2d at 160 n. 9.

The Court in *Kuehnert* further stated: (a)lthough Kuehnert's status as a tippee makes the defenses of unclean hands and *in pari delicto* available, their application rests with the discretion of the Court... The question must be one of policy: which decision will have the better consequences in promoting the objective of the securities laws by increasing the protection to be afforded the investing public. (cites omitted)

■ The requirements for applying the defense of *in pari delicto* were further explained in *James v. DuBreuil*, cited *supra*, which held that in order for the defense to apply the fault of the parties must be clearly mutual, simultaneous and relatively equal.

■ This balancing test for the application of the equitable *in pari delicto* defense was reiterated in *Woolf v. S. D. Cohn & Company*, 515 F.2d 591 (5th Cir. 1975), *rehearing denied*, 521 F.2d 225, *vacated on other grounds*, 426 U.S. 944, 96 S.Ct. 3161, 49 L.Ed.2d 1181, *on remand*, 546 F.2d 1252, *cert. denied*, 434 U.S. 831, 98 S.Ct. 115, 54 L.Ed.2d 91. The Court in *Woolf* balanced deterrence with compensation to those who have suffered pecuniary loss attributable to securities violations and concluded that even in cases where the fault of the plaintiff and defendant were relatively equal, simultaneous and mutual, the Court might still reject the defense if it appeared that the defendant's unlawful activities were of a

sort likely to have a substantial impact on the investing public, and the primary legal responsibility for and ability to control that impact was with the defendant. *Woolf*, 515 F.2d at 604. In other words, the fact that the plaintiff is an active, essential and knowing participant in the unlawful activity does not automatically trigger the imposition of the *in pari delicto* doctrine.

■ The complaint herein does not allege that the defendant, a securities broker/dealer, or its agent Becker, the account representative, were officers, directors, or controlling shareholders of any of the corporations to which Becker's "tips" related, nor does it indicate that either of them maintained any special relationship to the subject corporations so as to have access to their material, non-public, information. In the absence of any facts establishing defendant's status as a corporate "insider", it is impossible to characterize the plaintiff as a "tippee". As demonstrated, the status of "tippee" is directly related to that of his informant since a "tippee" must obtain his "tip" from a corporate "insider".

In *Kuehnert* the defendant/informer was a corporate insider disseminating false inside information with respect to corporate stocks. The *in pari delicto* defense applied since actual "tippees" receiving information from corporate "insiders" have a duty to disclose such wrongfully obtained information.

The same was true in *James* where the defendant was an organizer of the corporation whose stock was involved. Again, even though the defendant/"insider" disseminated false inside information as being true, the *in pari delicto* defense applied since, like the corporate insider, the plaintiff/"tippee" violated his duty to disclose the tip, a mutual, simultaneous and equal duty under the "insider" trading proscriptions of the securities laws.

ers" consist of directors, officers and controlling shareholders (top management), but that term has been stretched in some instances to include brokers, dealers and underwriters who

obtain access to material, inside information through their position of trust with the corporation. *Id.* § 513–517.

■ Only where plaintiff violates some duty imposed on him by the Securities Code, thereby becoming a culpable party, do the equitable doctrines of unclean hands and *in pari delicto* arise. In the absence of any breach of duty by plaintiff these equitable doctrines are never triggered since both parties are not at fault in the legal sense of that word.

■ Plaintiff Xaphes herein owed no duty to the vendors of his purchased stock portfolio because he was not a "tippee", a person who received inside information from a corporate "insider".

■ Furthermore, defendants herein committed a double fraud instead of the single fraud perpetrated in *Kuehnert* and *James*. In those cases the corporate "insider" gave false information to his "tippee". In the instant case the fraud is allegedly twofold: (1) Defendant misrepresented that he was a corporate "insider" who had access to inside information; (2) the information given by the informer was false. *Kuehnert* and *James* bar recovery under the doctrine of *in pari delicto* only with respect to the second type of fraud—not the first. Defendant must in fact *be* a corporate "insider", not just falsely represent that he is one in order to avoid liability for his misrepresentations to plaintiff.

The Supreme Court recently addressed the issue of disclosure in a somewhat different but analogous context. The Court in *Chiarella v. United States*, 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980), held that there was no duty to disclose information received by a financial printer who was able to deduce non-public, material information regarding names of target companies since he had no relationship with the sellers of the target company's securities whose stock he purchased. Although that case charged defendant in a criminal context, the same analysis applies since 15 U.S.C. § 78ff(a) provides for criminal sanctions to be imposed where there is a violation of Section 10(b) and Rule 10b–5.

■ The *Chiarella* Court stated that a duty to disclose arises from a relationship of trust or confidence between parties to a transaction. Parties who have duties to disclose are corporate insiders such as directors, officers and controlling shareholders who by virtue of their positions are afforded access to "inside" information. "Tippees" of corporate insiders are liable as participants after the fact in the insider's breach of a fiduciary duty. A purchaser of stock who has no duty to a prospective seller because he is neither an insider nor a fiduciary was held to have no obligation to reveal material facts. *Chiarella*, 445 U.S. at 229, 100 S.Ct. at 1115.

■ In the absence of any duty on plaintiff herein to disclose what he perceived to be material, inside information, but in fact was not, there can be no finding of fraud on his part which would constitute mutual, simultaneous and equal fault among the parties as required by *Kuehnert* and *James*. To uphold the defense of *in pari delicto* as a matter of law in the present case would be to hold that a duty to disclose under Section 10(b) arises from mere possession of nonpublic market information, a result forbidden by the Supreme Court in *Chiarella*, the legislative history of the Act, and the Congressional plan for regulation of the securities markets.

Another line of analysis likewise supports a refusal to apply the *in pari delicto* defense in this case. The very nature of equity assumes that the applications of its remedies will be on an ad hoc, discretionary basis. This area is purposely amorphous so as to avoid the rigidity of the letter of the law. The court in *Kuehnert* recognized this fundamental principle by ultimately reserving application of the defense to the discretion of the court.

Plaintiff herein should not be liable for nondisclosure since the information received was not inside information unavailable to the general public. Since the securities laws do not require the disclosure of information that is not inside information received from a corporate insider, the deterrent portion of the balancing test is missing. The remaining portion of the balancing test, the protection of the investing

public through compensation for securities violations perpetrated upon them, favors the imposition of liability on these defendants who allegedly effectuated a double fraud, or double misrepresentation.

The facts at trial or through discovery may well reveal that the defendants or their agent did indeed have a special relationship with one or more of the subject companies which gave them access to inside information. The pleadings filed to date, however, allege no breach of duty. Although defendants may be able to *factually* establish an *in pari delicto* defense, taking all of the allegations of plaintiff's Complaint as true on this motion to dismiss, the court finds that ground one of defendants' motion is without merit and that this complaint should not therefore be dismissed as a matter of law.

Defendants' second ground for dismissal of the complaint maintains that the complaint fails to plead fraud with particularity as required by Fed.R.Civ.P. 9(b). Rule 9(b) does not require the particularized pleading of malice, intent, knowledge or other conditions of mind since those abstractions are usually proven by circumstantial evidence; only fraud or mistake need be plead with particularity. The complaint viewed in its entirety meets the requirements of both Fed.R.Civ.P. 8(a) as well as the particularized requisites of Rule 9(b).

Ground three for dismissal is that the complaint does not connect the defendants with the alleged illegal scheme pursuant to Fed.R.Civ.P. 8(a). This ground for dismissal is without merit since the complaint does contain allegations sufficient to connect the acts complained of to the parties responsible therefor.

The fourth ground for dismissal is that the complaint fails to plead the elements necessary for recovery under an implied private cause of action pertaining to Section 10(b) and Rule 10b–5. This Court in *Hendrickson v. Westland Mineral Corp.,* 463 F.Supp. 826, 828–29 (S.D.Fla.1978) set out the allegations that must be plead in the 10(b) and 10b–5 context as follows: (1) that plaintiff was a "purchaser" or "seller" of securities within the meaning of the act (alleged in ¶ 10 of the present complaint) (2) the "scienter" of the defendant (alleged in ¶ 16 of the present complaint) (3) the "materiality"[4] of the misrepresentation or omission by the defendant (alleged in ¶ 19 of the present complaint) (4) "actual reliance" by the plaintiff on the misrepresentation by the defendant (alleged throughout the complaint) (5) the "due diligence" of the plaintiff (alleged in ¶ 26 of the present complaint).

Although the word "scienter" is *not* specifically used, nevertheless, facts amounting to the same are plead. The Fifth Circuit has stated that there must be allegations of fact amounting to scienter, intent to defraud, reckless disregard[5] for the truth, or knowing use of a device scheme or artifice to defraud. *Sargent v. Genesco, Inc.,* 492 F.2d 750, 761 (5th Cir. 1974). An allegation that the defendant knew or should have known of the misstatements in the disjunctive is sufficient as a matter of pleading to withstand a Rule 12(b)(6) Motion to Dismiss. *Sargent, supra.*

The fifth ground for dismissal is directed to Count II of the complaint predicated on plaintiff's failure to plead compliance with the "tender" requirements of Fla.Stat. Chapter 517 (now amended to exclude such requirements). Although not stated as such this aspect of the motion seeks dismissal of

---

4. The test for "materiality" has been defined by *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976).

5. The Fifth Circuit in a case decided on January 16, 1981 more carefully articulated the standard for scienter in implied private causes of action under 10(b) and 10b–5. The Court in that case, *Dwoskin v. Rollins, Inc.,* 634 F.2d 285

(5th Cir. 1981), reiterated its adoption of the scienter definition established in *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) as a "mental state embracing intent to deceive." The Court further stated that a recklessness standard equivalent to willful fraud might suffice, but that a mistake or inadvertent oversight is not enough.

Count II because of plaintiff's failure to plead compliance with a condition precedent, namely, "tender" of the stock at issue back to the defendants.

It is a well established rule of construction that in the absence of clear, legislative expression to the contrary, a law is presumed to be given prospective application only. *Walker & LaBerge, Inc. v. Halligan*, 344 So.2d 239 (Fla.1977). The Court in *Walker* further clarified the presumption of prospective application by stating that the doctrine only pertained to statutes modifying fundamental, substantive rights. Procedural rights granted by the act could be abrogated retroactively, because no one has a vested right in any given mode of procedure.

■ The amendment to Fla.Stat. § 517.21 is "procedural" (simply a condition precedent to bringing suit) and not "substantive". It created no new right but simply modified the procedure for enforcing an existing right. The amended version of Fla.Stat. § 517.21, to wit § 517.211 which does not require any tender back will, therefore, be applied retroactively. Since no condition precedent presently exists this aspect of the motion should likewise be denied.

Based on the foregoing it is ORDERED AND ADJUDGED that defendants' Motion to Dismiss the Complaint be, and the same is hereby DENIED in its entirety. It is further ORDERED that defendants shall file their answers to said complaint within twenty (20) days from the date hereof.