426 So.2d 1055 (1983)
Richard KULLA, Appellant,
v.
E.F. HUTTON & COMPANY, INC. and Herbert A. Wilson, Appellees.
No. 82-433.
District Court of Appeal of Florida, Third District.
January 25, 1983.
Rehearing Denied February 28, 1983.
*1056 Howard W. Mazloff, Coral Gables, for appellant.
Walton, Lantaff, Schroeder & Carson and O'Bannon M. Cook, Miami, for appellees.
Before HENDRY, DANIEL S. PEARSON and JORGENSON, JJ.
DANIEL S. PEARSON, Judge.
Kulla brought suit alleging that E.F. Hutton (through its co-defendant, agent, employee and registered representative, Herbert Wilson) talked:
"Defendant WILSON, called Plaintiff and represented to him that he had received a tip from California concerning the stock of Pacific Coast Medical Enterprises.
"WILSON told Plaintiff that papers had been signed for a merger of Pacific Coast Medical Enterprises into another company and that the papers were at that moment sitting on the desk of the president of Pacific.
"At that time, the stock of Pacific was quoted at three and one-eighth and WILSON told Plaintiff that it would soon sell for six dollars per share.
"WILSON further represented that this was a `sure thing' and that he was not permitted to do this but that he wanted to tell Plaintiff about it so that Plaintiff could buy the stock.
"WILSON further represented that the merger announcement would be announced in The Wall Street Journal that Friday." (Paragraph 8.a. through e. of the complaint).
and Kulla listened:
"In reliance upon the foregoing, Plaintiff purchased 5,000 shares of Pacific Coast Medical Enterprises on February 9, 1981 at three and one-eighth dollars per share and 5,000 shares of Pacific at a price of three and one-eighth on February 10, 1981. In paying for these shares and the applicable commission, Plaintiff paid to Defendant, HUTTON, the sum of $32,440.00 on or about February 17, 1981." (Paragraph 9 of the complaint).
Hopefully, the eavesdroppers in the well-known E.F. Hutton advertisement were not listening, because, according to Kulla:
"Thereafter, the merger did not occur and when Plaintiff questioned Defendant, WILSON, about this, WILSON, represented to Plaintiff that Plaintiff should not worry that the stock would come back *1057 in price. The stock is currently selling at approximately $1.00 per share today. Defendant, WILSON, has now admitted to Plaintiff that there was no merger." (Paragraph 10 of the complaint).
Kulla asked for rescission of the transaction and compensatory and punitive damages. Again, E.F. Hutton talked, and this time the trial court listened. Kulla's complaint was dismissed with prejudice on the ground that the facts alleged showed that Kulla actively participated in the alleged scheme to defraud employed by the defendants, and therefore acted in pari delicto with the defendants, barring recovery. Kulla appeals, and it is our turn to listen.
It is a well-settled principle of law requiring little discussion that one who himself engages in a fraudulent scheme, that is, acts in pari delicto, may forfeit his right to any legal remedy against a co-perpetrator. Goldring v. Johnson, 65 Fla. 381, 62 So. 212 (1913); Horjales v. Loeb, 291 So.2d 92 (Fla. 3d DCA 1974); Frye v. Taylor, 263 So.2d 835 (Fla. 4th DCA 1972). The rationale underlying this principle, in its most distilled form, is that the "law will not lend its support to a claim founded on its own violation," Robert G. Lassiter & Co. v. Taylor, 99 Fla. 819, 832, 128 So. 14, 19 (1930). See also Citizens' Bank & Trust Co. v. Mabry, 102 Fla. 1084, 136 So. 714 (1931); Schaal v. Race, 135 So.2d 252 (Fla. 2d DCA 1961). It is, however, obvious that merely acting on a tip does not, by itself, make the actor guilty of wrongdoing. As the parties readily acknowledge, Kulla can be said to have acted in delicto only if his acting on the tip under the circumstances described in the complaint was prohibited by law.[1]
*1058 The defendants assert that Kulla's actions were in violation of the antifraud provision of the Securities Exchange Act of 1934. Section 10(b) of the Act, 15 U.S.C. § 78j, prohibits the use "in connection with the purchase or sale of any security ... [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe." Rule 10b-5, promulgated by the Securities and Exchange Commission, makes it unlawful for any person to "employ any device, scheme or artifice to defraud," or to "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."
The Act has been construed to apply to a person receiving a tip only when the information received comes from an "insider," that is, one with a relationship to the affected corporation giving him access to information which should be used "only for a corporate purpose and not for the personal benefit of anyone." In re Cady, Roberts & Co., 40 S.E.C. 907, 912 (1961). When such inside information is received from an "insider," the recipient who has acted thereon can be deemed to have engaged in an act which operates as a fraud or deceit in connection with the purchase or sale of a security in violation of Section 10(b) of the Act. The tippee's liability under the law is predicated on the fact that he has knowledge or reason to know
"that the material non-public information became available to [him] in breach of a duty owed to the corporation not to disclose or use the information for non-corporate purposes. Such knowledge, in effect, renders the tippee a participant in the breach of duty when he acts on the basis of the information received." In re Investors Management Co., Inc., 44 S.E.C. 633, 650 (1971) (Smith, Comm., concurring).
Thus, a tippee is subjected to the same liability as an insider-tippor by virtue of the tippee's participation after the fact in the insider's breach of fiduciary duty owed to the corporation. Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 495 F.2d 228 (2d Cir.1974). If the tippee knows or has substantial reason to know that the information given to him by an "insider" was received from within the corporation and was material and non-public, the tippee has a duty not to profit from the use of this information, and if he does so, is in violation of the Act. See Chiarella v. United States, 445 U.S. 222, 231 n. 12, 100 S.Ct. 1108, 1116 n. 12, 63 L.Ed.2d 348, 358 n. 12 (1980).
It is apparent from the allegations of Kulla's complaint that, if the defendants were to be believed, Kulla had substantial reason to know that the information given to him came from within Pacific Coast Medical Enterprises and was material and non-public. However, there is nothing in Kulla's complaint to show that either E.F. Hutton & Company or Wilson were "insiders" of Pacific Coast Medical Enterprises, so as to make the defendants liable under the Act for divulging the secret information and, in turn, subject Kulla, as the recipient of the information, to liability.
As we have noted, an "insider" is someone with a special relationship to the corporation affected.
"As the law was originally conceived, with an emphasis on the prevention of abuse by top management and controlling shareholders, the term `insider' was limited to officers, directors, and holders of 10 percent or more of the stock. However, under rule 10b-5 the concept has been broadened to include not only the previously mentioned top-rung corporate personnel and owners but also all persons `in special relationship with a company and privy to its internal affairs ...' Cady, Roberts & Co., 40 S.E.C. 907, 912 (1961)." Herman, Equity Funding, Inside Information, *1059 And The Regulators, 21 U.C.L.A.L.Rev. 1, 7 (1973).
In Chiarella, supra, the court made clear that the mere possession of superior undisclosed information does not make one an insider. As one commentator has put it, "[m]ost important, a duty to disclose  something more than an ad hoc conclusion that fairness requires disclosure in a particular case  will have to be identified before liability can be imposed." Langevoort, Insider Trading And The Fiduciary Principle: A Post-Chiarella Restatement, 70 Cal.L. Rev. 1, 17 (1982). See also Polinsky v. MCA, Inc., 680 F.2d 1286 (9th Cir.1982); Feldman v. Simkins Industries, Inc., 679 F.2d 1299 (9th Cir.1982). Compare Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra (insider status established where brokerage firm acting as prospective underwriter for corporation's debenture issue). Apart from identifying the defendants as brokers in apparent possession of confidential information, Kulla's complaint is barren of any allegation that these defendants occupied a special relationship to Pacific Coast Medical Enterprises, a necessary predicate to a finding that the defendants were insiders and that, derivatively, Kulla acted in pari delicto. Thus, we agree with the conclusion reached in Xaphes v. Shearson, 508 F. Supp. 882 (S.D.Fla. 1981):
"In the absence of any facts establishing defendant's status as a corporate `insider,' it is impossible to characterize the plaintiff as a `tippee.' As demonstrated, the status of `tippee' is directly related to that of his informant since a `tippee' must obtain his tip from a corporate `insider.'
... .
"To uphold the defense of in pari delicto as a matter of law in the present case would be to hold that a duty to disclose under Section 10(b) arises from mere possession of nonpublic information, a result forbidden by the Supreme Court in Chiarella, the legislative history of the Act, and the Congressional plan for regulation of the securities markets." Id. at 885-86.
We have not overlooked the possibility that the defendants could be deemed insiders under Section 517.301(1), Florida Statutes (1981),[2] rendering Kulla, as their tippee, in delicto under the Florida Securities Act. We believe, however, that this possibility is precluded by Schein v. Chasen, 313 So.2d 739 (Fla. 1975), where the Florida Supreme Court refused to give to the Florida Act a more expansive reading than that given to its federal counterpart. In Schein, the president of Lums, Inc., a Mr. Chasen, tipped a stockbroker that Lums' profits would be lower than earlier public projections. The broker, in turn, relayed this information to the managers of two mutual funds, who sold their entire holdings of Lums' stock before this adverse information was publicly disclosed. The court, construing Florida law pursuant to a certified question from the Federal Fifth Circuit Court of Appeals, adopted the view that liability under the Florida Act should be imposed on only those who occupied a fiduciary relationship to Lums despite the fact that the broker and his tippees, who had no such relationship to the corporation, had profited by their use of confidential information.
In sum, the complaint in the present case is devoid of any allegation showing that the defendants were insiders of Pacific Coast Medical Enterprises. We have not the slightest way of knowing how these defendants  if, in fact, they did  came into possession *1060 of the information they ultimately passed on to Kulla. Therefore, it cannot be said at this juncture that Kulla, by receiving the tip and acting on it, violated either the Federal or Florida Securities Law, and, it follows, it cannot be said that Kulla acted in pari delicto with the defendants so as to render his complaint dismissible. See Xaphes v. Shearson, supra. Accordingly, the order dismissing the complaint is reversed and the cause remanded for further proceedings.[3]
Reversed and remanded.
NOTES
[1] As Kulla correctly points out, even if it could be said that his actions constituted a violation of the law so as to render him liable to others, it does not follow that his action against the defendants is automatically defeated by their defense of in pari delicto. The defense of in pari delicto is not woodenly applied in every case where illegality appears somewhere in the transaction; since the principle is founded on public policy, it may give way to a supervening public policy.

"The fundamental purpose of the rule must always be kept in mind, and the realities of the situation must be considered. Where, by applying the rule, the public cannot be protected because the transaction has been completed, where no serious moral turpitude is involved, where the defendant is the one guilty of the greatest moral fault, and where to apply the rule will be to permit the defendant to be unjustly enriched at the expense of the plaintiff, the rule should not be applied." Goldberg v. Sanglier, 96 Wash.2d 874, 639 P.2d 1347, 1353-54 (1982).
Compare Singleton v. Foreman, 435 F.2d 962 (5th Cir.1970) (under Florida law, in pari delicto defense does not bar client from recovering moneys paid to attorney who made her sign contingent fee contract in divorce proceeding, despite illegality of contract), with Stewart v. Stearns & Culver Lumber Co., 56 Fla. 570, 48 So. 19 (1908) (courts will not aid either party to a contract in restraint of trade). And where to allow in pari delicto defense to prevail would be to defeat some legislatively declared policy, the defense will not prevail.
"When the legislature enacts a statute forbidding certain conduct for the purpose of protecting one class of persons from the activities of another, a member of the protected class may maintain an action notwithstanding the fact that he has shared in the illegal transaction. The protective purpose of the legislation is realized by allowing the plaintiff to maintain his actions against the defendant within the class primarily to be deterred. In this situation it is said that the plaintiff is not in pari delicto. (emphasis supplied)." Cooper v. Paris, 413 So.2d 772 (Fla. 1st DCA 1982) (quoting from 74 A.L.R.3d 637, 662).
In short, in the words of Mr. Justice Holmes, "a person does not become an outlaw and lose all rights by doing an illegal act." National Bank & Loan Co. v. Petrie, 189 U.S. 423, 425, 23 S.Ct. 512, 513, 47 L.Ed. 879, 880 (1903). We need not, however, now decide whether the defense should be available to these defendants, since as will be seen, infra, this question is not reached until it can be said that Kulla was guilty of legally cognizable wrongdoing. If and when that determination is made, the parties may renew their arguments to the trial court that the defense should or should not be available in the setting of a violation of the securities laws. Compare Wolfson v. Baker, 623 F.2d 1074 (5th Cir.1980); Tarasi v. Pittsburgh National Bank, 555 F.2d 1152 (3d Cir.1977); James v. DuBreuil, 500 F.2d 155 (5th Cir.1974); Kuehnert v. Texstar Corp., 412 F.2d 700 (5th Cir.1969) (defense available), with Naftalin & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 469 F.2d 1166 (8th Cir.1972); Moholt v. Dean Witter Reynolds, Inc., 478 F. Supp. 451 (D.C. 1979); Nathanson v. Weis, Voisin, Cannon, Inc., 325 F. Supp. 50 (S.D.N.Y. 1971) (defense not available), and Hoxsey v. Beaird, 287 F. Supp. 416 (W.D.Okl. 1968) (defense not available except as to punitive damages). See also Mallis v. Bankers Trust Co., 615 F.2d 68 (2d Cir.1980) (question of relative fault in respect to in pari delicto defense is for fact-finder).
[2] The section provides:

"It is unlawful, and a violation of the provisions of this chapter, for any person:
"(1) In connection with the offer, sale, or purchase of any security, including any security exempted under the provisions of s. 517.051 and including any security sold in any transaction exempted under the provisions of s. 517.061, directly or indirectly: "(a) To employ any device, scheme or artifice to defraud;
"(b) To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or
"(c) To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon any person."
[3] If, upon further proceedings, it is found that the defendants were not insiders, the only effect of that finding will be that the defense of in pari delicto is not available to them. Such a finding, however, does not mean that the defendants are not liable to Kulla because of some different breach of a statutory duty (e.g., defendants themselves were tippees of an insider) or breach of the common law duty not to make fraudulent misrepresentations to another.