**Jack GRUMET, individually and as Trustee for Andrea Grumet and Joseph Grumet, Plaintiff,**

**v.**

**SHEARSON/AMERICAN EXPRESS, INCORPORATED and Stuart Travis, Defendants.**

Civ. No. 82–2778.

United States District Court, D. New Jersey.

May 26, 1983.

Charles F. Mandell, Steven Herman, Mandell & Shur, Edison, N.J., for plaintiff.

Robert S. Moraff, Fiorello, Moraff & Foster, Totowa, N.J., for defendant Shearson/American Exp., Inc.

Martin J. Kole, Murphy & Ellis, Hackensack, N.J., for defendant Travis.

## OPINION

ANNE E. THOMPSON, District Judge.

This securities action comes before the court upon motions for summary judgment by the two defendants, Shearson/American Express, Inc. ["Shearson"] and its broker Stuart Travis. By order dated January 4, 1983, this court denied defendants' motions to dismiss the original complaint provided that plaintiff file an amended complaint within 20 days of that order. On January 20, 1983, plaintiff filed a seven-count amended complaint. The gist of this complaint is that Travis fraudulently induced plaintiff to purchase certain stocks which later turned out to be unprofitable.

Travis was responsible for two securities accounts in which plaintiff had an interest. As in the original complaint, plaintiff sets forth basically five improper actions on the part of Travis in the amended complaint. On February 25, 1982, Travis induced plaintiff to purchase stock of Wainoco Oil Company. The stock of Wainoco is traded on the New York Stock Exchange. To induce that purchase, Travis allegedly told Grumet that he had "inside information" from a member of Wainoco's board of directors that Texas General was planning to acquire Wainoco and that such "inside information" was reliable and trustworthy. In addition, Travis purportedly represented to plaintiff that the price of Wainoco stock would rise from $19 per share to $30 to $32 per share in the near future. Grumet also asserts that Travis told him that he had bought $200,000 worth of Wainoco stock for his own account and $5,000 worth of that stock for the father-in-law of the Wainoco director who told Travis about the proposed acquisition or merger.

Shortly after plaintiff purchased the Wainoco stock, the price of the stock started to fall. After relating his concern to Travis in a March 1982 conversation, Travis allegedly told Grumet to "hang tough—the story is true." Following Travis' advice to purchase additional Wainoco stock, Grumet then purchased another 2,000 shares on March 16 and 17, 1982. The price of Wainoco stock continued to fall, however, and Grumet sold shares of that stock at a substantial loss to cover his margin requirements.

Plaintiff claims that Travis knew that his statements concerning Texas General's plan to acquire Wainoco were false or that Travis acted recklessly in making such statements. Grumet posits that Travis failed to investigate the facts underlying the impending acquisition and did not secure or attempt to secure any confirmation from Texas General or any other reliable source.

Grumet contends that Travis' conduct violated section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, as well as section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a). Plaintiff asserts that Shearson violated section 17(a) of the Securities Act of 1933 and section 20(a) of the Securities Exchange Act of 1934. Plaintiff has also sought to invoke this court's pendent jurisdiction for his state law claims.

Defendants' motions for summary judgment are predicated primarily upon the defense of *in pari delicto,* meaning literally "of equal fault." Defendants also chal-

lenge plaintiff's proof of causation and the availability of a private right of action under section 17(a), as well as raise the equitable defenses of estoppel, laches, waiver and ratification.

If summary judgment is granted based upon the *in pari delicto* defense to the 10b–5 claim, the complaint will be dismissed in its entirety. Although the United States Court of Appeals for the Third Circuit has recently declined to reach the question of whether there is a private right of action under section 17(a), *Walck v. American Stock Exchange, Inc.*, 687 F.2d 778, 789 n. 16 (3d Cir.1982), section 17(a) is substantially identical to Rule 10b–5 and the same facts are pleaded as a violation. *Id.* The analysis of the impact on the regulatory scheme of application of the *in pari delicto* defense to a 10(b) action, *infra,* would not appear to change significantly for a 17(a) claim. Thus, if the 10b–5 claim is dismissed, the 17(a) claim will be dismissed as well. Plaintiff also contends that several of Travis' representations cannot in any manner be deemed "inside information." Thus, plaintiff asserts that acceptance of the *in pari delicto* defense would, nevertheless, preclude dismissal of the complaint. The court cannot accept this argument. In his complaint, plaintiff stated unequivocally that without the inside information he would not have entered into the transactions in question. *See* complaint, ¶¶ 16, 17. Thus, if plaintiff cannot rely upon alleged misrepresentations of inside information, there cannot be the requisite causation. In addition, if there is no basis for liability on the part of Travis under the federal securities laws, the federal claims against Shearson must also be dismissed. Finally, if the federal claims are dismissed, the court will dismiss the pendent state law claims. *Lechtner v. Brownyard,* 679 F.2d 322, 327 (3d Cir.1982).

Turning now to the merits of the *in pari delicto* defense and the interplay of that defense with comprehensive federal regulatory schemes, the court is not writing on a clean slate. In *Tarasi v. Pittsburgh Nat'l Bank,* 555 F.2d 1152 (3d Cir.), *cert. denied,* 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 451 (1977), the Third Circuit applied the doctrine of *in pari delicto* to a securities fraud action based upon use of inside information. While plaintiff attempts to distinguish *Tarasi* in a variety of ways, including by questioning whether or not Travis is really an insider or whether different policy considerations apply to a broker as opposed to a corporate insider, for the following reasons the court finds these distinctions unavailing.

It is now well-settled that the antifraud provisions of the federal securities laws require that certain persons possessing material non-public information bearing upon the value of an enterprise's securities not buy or sell such securities unless they first disclose this information. *See, e.g., SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833 (2d Cir.1968) (en banc), *cert. denied sub nom. Coates v. SEC,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). *See also Staffin v. Greenberg,* 672 F.2d 1196, 1202 (3d Cir.1982). This rule was first invoked in interpreting rule 10b–5 in the context of insiders or a corporation itself trading on inside information about corporate assets or prospects. Brudney, *Insiders, Outsiders, and Informational Advantages Under the Federal Securities Laws,* 93 Harv.L.Rev. 322 (1979). "Tippees" of insiders have been held liable under rule 10b–5 because they have a duty not to profit from the use of inside information. *Chiarella v. United States,* 445 U.S. 222, 230 n. 12, 100 S.Ct. 1108, 1116 n. 12, 63 L.Ed.2d 348 (1980). The tippee's obligation arises from his role as a participant after the fact in the insider's breach of his fiduciary duty. *Id.*

In *Tarasi, supra,* defendant bank officer allegedly told plaintiffs that two corporations were going to merge and that his bank, another defendant, was behind the merger. The bank officer stated that the stock of one of the corporations would probably double in value and that bank insiders were investing heavily in the securities of the two corporations. The merger never occurred and plaintiffs suffered losses as a result.

Despite the dispute between the parties concerning whether the defendant had made the representations, the court concluded that no *material* question of fact existed because it was undisputed that none of the plaintiffs disclosed, in connection with their stock purchases, the inside information which they claimed they possessed. *Id.* at 1156.

The court stated that the doctrine of *in pari delicto* would bar a party from recovering damages if his losses were "substantially caused by 'activities the law forbade *him* to engage in.'" *Id.* at 1156–57, *quoting Perma Life Mufflers, Inc. v. Int'l Parts Corp.,* 392 U.S. 134, 154, 88 S.Ct. 1981, 1992, 20 L.Ed.2d 982 (Harlan, J., concurring and dissenting) (emphasis in original). The court noted that the doctrine should be applied only when it can fairly be said that the plaintiff's fault is substantially equal to that of the defendant. *Id.* at 1157. In addition, before denying recovery, the court must assess the impact of such a result on the enforcement of the statutory scheme. *Id.* at 1159.

The court first determined that, as a matter of law, plaintiffs' unlawful conduct was of sufficient magnitude to invoke the application of the *in pari delicto* doctrine. *Id.* at 1161. As "tippees," plaintiffs were under an obligation either to make full disclosure before engaging in the transactions in question or to refrain from trading until the information was made public. *Id.* In addition, there was no question but that plaintiffs' misconduct was voluntary. *Id.* at 1161, 1162. The court appeared to make a general statement that tippees are to be considered *in pari delicto* with tippers. *Id.* at 1162. The court explained that the voluntary unlawful acts of the tippees may be said to be a *sine qua non* of their losses: but for plaintiffs' purchases of the corporation's securities, they would not have suffered any injury. *Id.*

The court stated that the focus of the inquiry should be on the extent to which the acts of the plaintiff and defendants can be said to be substantial causes of the injury suffered by the plaintiff. *Id.* at 1162 n.

50. Thus, the court concluded that the doctrine should apply. *Id.* at 1162.

Turning to the second part of the analysis, the public policy considerations, the court stated that the threat of application of *in pari delicto* would eliminate the "warranty" tippees would have concerning the accuracy of the tip if the tipper were to be held liable. *Id.* at 1163–64. If tippees could recover for false tips, there would be little incentive for tippees not to use confidential information. *Id.* at 1164. On the other hand, there are already substantial deterrents for tippers through the possibility of SEC and criminal actions, as well as private suits by non-tippee purchasers and sellers who have been adversely affected by the dissemination of adverse information. *Id.* Thus, for public policy reasons, the doctrine was held applicable.

Plaintiff contends that this case presents a different picture for several reasons. First, it is not clear from the record that Travis actually had inside information. Second, Travis' position as a broker entails public policy considerations different from those present in *Tarasi.* At least one district court has held that in a situation in which the broker is not necessarily an insider, but represents that he has inside information, which information turns out to be false, the plaintiff cannot necessarily be considered a tippee. *Xaphes v. Shearson, Hayden, Stone, Inc.,* 508 F.Supp. 882, 885–87 (S.D.Fla.1981). If the plaintiff is not a tippee, the argument goes, he has no duty to disclose to a prospective seller. *Id.* at 886, *citing Chiarella, supra,* 445 U.S. at 229, 100 S.Ct. at 1115. The *Xaphes* court added that, since the information was not unavailable to the public, the deterrent value of the *in pari delicto* doctrine is not present. *Id.* The court concluded that if facts at trial or through discovery revealed that defendants or their agent did indeed have a special relationship giving them access to inside information, the doctrine may be applicable. *Id.* at 887.

Whether or not the *Xaphes* decision is compatible with the decision of the United States Court of Appeals for the Fifth Cir-

cuit in *Kuehnert v. Texstar Corp.*, 412 F.2d 700 (5th Cir.1969), this court does not find its reasoning applicable to this case or consonant with the analysis of the Third Circuit in *Tarasi*. In *Chiarella, supra*, the Supreme Court cited with favor the SEC's decision in *Cady, Roberts & Co.*, 40 S.E.C. 907 (1961). In *Cady, Roberts*, the broker-dealer was found liable under section 10(b) because it received non-public information from a corporate insider of the issuer. 445 U.S. at 227 n. 8, 100 S.Ct. at 1114 n. 8. Since the insider could not use the information, neither could the partners in the brokerage firm with which he was associated. *Id.* Similarly, a tippee of a broker in that situation cannot trade on inside information.[1]

█ The only significant difference between the latter situation and that presented in the instant case is that in this case the court does not know for certain that defendant Travis actually possessed inside information from a member of Wainoco's board of directors. This uncertainty does not change the result. The concept of an "insider" has been flexible. *Chiarella, supra*, 445 U.S. at 250, 100 S.Ct. at 1126 (Blackmun, J., dissenting).[2] The term "tipper" has also been defined broadly by the Third Circuit. "A 'tipper' is a person who has possession of material inside information and who makes selective disclosure of such information for trading or other personal purposes. A 'tippee' is one who receives such information from a 'tipper.'" *Tarasi, supra*, 555 F.2d at 1154 n. 1 (citations omitted).

█ In reaching its determination, the Third Circuit in *Tarasi* endorsed Judge Aldrich's reasoning in *Kuehnert, supra*. *Id.* at 1163. In *Kuehnert*, Judge Aldrich, speaking for the majority, noted that tippees, although not technically insiders, have a duty under rule 10b–5 to disclose any inside information when making a purchase or sale. Strictly speaking, plaintiff could not have been considered a tippee since the tip received turned out to be inaccurate and, consequently, plaintiff had not in fact withheld material information from his vendors. *Id.* at 1159. As the Third Circuit noted, this should make no difference inasmuch as the conduct proscribed by rule 10b–5 extended to attempted as well as consummated frauds. *Id.* at 1159–60.

█ It is noteworthy that section 10(b) refers to "any manipulative or deceptive device. . . ." This language appears broad enough to encompass certain conduct regardless of its outcome. *Kuehnert, supra*, at 704. Rule 10b–5(a) prohibits the employment of any "scheme" to defraud and subsection (c) proscribes any act, practice or course of business which operates or *would operate* as a fraud or deceit. As the court stated in *Kuehnert*, there is no difference in substance between a successful fraud and an attempted fraud. 412 F.2d at 704. "In determining whether a plaintiff's hands were unclean equity has customarily looked to intent." *Id.* Thus, when two parties have conspired to cheat a third, and, instead, one cheats the other, no relief is given. *Id.*

1. The fact that Travis is a broker rather than a corporate insider does not change the analysis. In *Nathanson v. Weis, Voisin, Cannon, Inc.*, 325 F.Supp. 50 (S.D.N.Y.1971), upon which plaintiff relies, the court appeared to equate the role of the broker and any other corporate insider. In *Tarasi*, the Third Circuit noted that *Nathanson* presented a factual pattern similar to the case before it, despite the broker's involvement in *Nathanson*. 555 F.2d at 1159. Plaintiff has not proffered any public policy considerations which would meaningfully distinguish corporate insiders from broker insiders, and as will be discussed later, the Third Circuit's public policy analysis in *Tarasi* applies equally to the instant action.

2. *Chiarella* differs from this case in that there was no duty to the public owed by the defendant in *Chiarella*. *Chiarella* involved criminal charges against a printer who purloined information pertinent to a transaction while at work. The defendant did not have a duty to disclose because he was not an insider or a fiduciary, and was not a tippee. Unlike the instant case, there were no allegations in *Chiarella* that defendant had attempted to use inside information or had acted based upon the belief that an insider had disclosed to him inside information.

The mere fortuity that Travis may not have been an insider has no bearing upon plaintiff's own acknowledged use of a scheme to defraud and his conduct which would operate as a deceit. If plaintiff is barred from recovery for damages if the tip turns out to be false, there is no justification for granting him relief if, by another fortuity, it turns out that the tipper may not in fact have been an insider. The conduct on plaintiff's part was still voluntary, and the attempted unlawful conduct on his part was a substantial cause of his losses.[3]

Permitting a distinction to be made when the tipper is not in fact an insider would serve to give the tippee the very "warranty" the third and fifth circuits have denied to disappointed tippees. Such a result would not only fail to discourage, but would actually encourage improper use of inside information. If the tipper does not in fact possess inside information, there is relatively little benefit to the public from holding him liable for a false tip, particularly when a tipper who actually possesses and passes on inside information is shielded from liability through application of *in pari delicto*. Conversely, it is unreasonable to reward a plaintiff, although impure of heart, who is fortunate enough to have his tipper turn out not to be a tipper at all. It would be a confused message to send to parties who decide to make unlawful use of inside information that, if the tip turns out to be false, they should be prepared to prove that the inside information was not in fact from an inside source. Finally, the same concern expressed by the Third Circuit in *Tarasi* with the difficulty of tracing tippees applies in this instance.

Thus, the policy justifications for applying the doctrine of *in pari delicto* to a corporate insider apply equally to this case. Accordingly, summary judgment is granted as to the section 10(b) and section 17(a)

claims. The section 20 claim will also be dismissed. The state law claims will be dismissed for lack of pendent jurisdiction. The court will enter an appropriate order.

---

**3.** Although plaintiff asserts that additional discovery is warranted, the court must reject this contention. While there may be questions of fact remaining concerning defendants' conduct, there are no *material* questions of fact since the allegations of the complaint are sufficient for purposes of analysis of the *in pari delicto* defense. No question exists as to plaintiff's knowledge of the confidential nature of the information disclosed to him. There is no question but that plaintiff knew that the information was "inside" information and that there was a direct relationship between plaintiff and his "tipper."