EVANDER, J.
 

 Alan B. Garfinkel, P.A. (“Garfinkel”) appeals from orders dismissing with prejudice its complaint and second amended complaint against appellees, Scott A. Mag-er, Mager Law Group, P.A., and National Trial Group, LLC. Garfinkel’s action was based primarily on the alleged breach of a contract entered into by the parties whereby appellees agreed,
 
 inter alia,
 
 that they would not represent or otherwise assist a party who initiated or maintained a lawsuit or claim against Garfinkel. The trial court found that such provision violated public policy and declared the parties’ contract void and unenforceable. We reverse. We conclude that the contract would not violate public policy where if, as alleged in the complaint, Mager possessed confidential information as the result of his prior employment and fiduciary relationship with Garfinkel and appellees would be able to use that information to the detriment of Garfinkel if they provided representation or assistance to a party who had initiated or maintained a lawsuit ■ or claim against Garfinkel.
 

 From October 2006 to July 2, 2007, attorney Mager was employed by Garfinkel, a law firm, and served as the firm’s managing partner. On July 2, 2007, Garfinkel terminated Mager’s employment. Mager subsequently sued Garfinkel for monies allegedly owed as a result of his contributions to the firm. That lawsuit was dismissed when the parties entered into a global settlement agreement in February 2008.
 

 Pursuant to the terms of the settlement' agreement, Garfinkel paid Mager $175,000 (in addition to $100,000 previously paid to Mager), Mager dismissed the lawsuit against Garfinkel, and the parties released each other from any past or present claims. The agreement provided that ap-pellees would not render any assistance nor give advice to any party who initiated, maintained, or prosecuted any lawsuit or claim against Garfinkel. Appellees expressly acknowledged in the agreement that the promise not to assist or advise a party in litigation against Garfinkel was made to induce Garfinkel to enter into the agreement and was material to Garfinkel’s agreement to pay Mager additional money. Specifically, paragraph 8(c) of the agreement provided:
 

 Scott A. Mager affirmatively undertakes that he has not and will not hereafter render any assistance, advice, counsel, support or information of any kind or description whatsoever to any person,
 
 *223
 
 group, company or association to initiate, maintain, or prosecute any lawsuit or claim against Alan B. Garfínkel, individually or Alan B. Garfínkel, P.A. In consideration for the payments received under this agreement, the Mager releas-ees affirmatively represent that, as of the date of this agreement, they have not provided any information to any third party, whether by them own initiation or by request of the third party or its agents or assigns, or any information that could be used to disparage, denigrate or initiate a lawsuit or any provided agency or regulatory matter against the Garfínkel releasees. This representation is made to induce Garfínkel to enter into this agreement and is material to Garfínkel releasees making payment under this agreement.
 

 The settlement agreement also contained'a liquidated damages provision by which ap-pellees acknowledged that a violation of the above provision would be conclusively presumed to cause irreparable harm and would require appellees to return the money paid by Garfínkel.
 

 In October 2008, Garfínkel filed a complaint against Mager seeking damages, in-junctive relief, and a declaratory judgment that the settlement agreement provisions were valid and enforceable. The complaint alleged that appellees breached the contract by, among other things, representing clients in actions brought against Garfínkel. Appellees filed a motion to dismiss the complaint arguing that the settlement agreement was against public policy because it improperly limited the freedom of potential clients to choose Mager as their lawyer and limited Mager’s freedom to accept future clients. The trial court granted appellees’ motion, finding first that the agreement violated Rule 4-5.6 of the Rules Regulating the Florida Bar. That rule provides:
 

 A lawyer shall not participate in offering or making:
 

 (a) a partnership, shareholders, operating, employment, or other similar -type of agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or
 

 (b) an agreement in which a restriction on the lawyer’s right to practice is part of the settlement of a client controversy.
 

 The trial court recognized that a violation of Rule 4-5.6 would not,'
 
 ipso facto,
 
 require the trial court to void the agreement. The Preamble to the Rules Regulating the Florida Bar provides in part:
 

 Violation of a rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption that a legal duty has been breached.... The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapons.
 

 Preamble, Ch. 4, R. Regulating Fla. Bar;
 
 see also Mark Jay Kaufman, P.A. v. Davis & Meadows, P.A,
 
 600 So.2d 1208 (Fla. 1st DCA 1992) (even assuming that fee-splitting contract divided fee in manner inconsistent with ethical rule, attorney could not rely upon rule to avoid contractual obligations);
 
 Miller v. Jacobs & Goodman, P.A.,
 
 699 So.2d 729 (Fla. 5th DCA 1997).
 

 However, the trial court found that because the provision limited the right of future clients to select Mager as their attorney, the agreement violated public policy. Garfinkel’s counts for breach of contract, injunctive relief and declaratory relief were dismissed with prejudice.
 

 
 *224
 
 Garfinkel subsequently filed a second amended complaint for unjust enrichment, monies had and received, conversion, and rescission, seeking return of monies paid to Mager pursuant to the agreement. Garfinkel alleged that at the time the agreement was executed, Garfinkel believed it to be valid and enforceable but Mager’s actions demonstrated that appel-lees never intended to comply with the contract and, therefore, Mager was obligated to return the monies paid, The trial court granted appellees’ motion to dismiss the second amended complaint with prejudice, accepting the argument that the parties were
 
 in pari delicto
 
 and the court should leave the parties as it found them.
 

 On appeal, Garfinkel argues that the trial court erred in dismissing its complaint and its second amended complaint because the settlement agreement did not violate public policy.
 
 [1]
 
 We agree.
 

 Because of the public concern that freedom of contract not be lightly interfered with, courts should exercise extreme caution when called upon to declare transactions void as contrary to public policy.
 
 Bituminous Cas. Corp. v. Williams,
 
 154 Fla. 191, 17 So.2d 98, 101 (1944). In
 
 Bituminous,
 
 our supreme court stated that where a contract is not prohibited under a constitutional or statutory provision, or prior judicial decision, it should not be struck down on the basis that it violates public policy, unless “it be clearly injurious to the public good or contravene some established interest of society,”
 
 Id.
 
 at 101-02;
 
 see also Fla. Windstorm Underwriting v. Gajwani,
 
 934 So.2d 501, 506-07 (Fla. 3d DCA 2005).
 

 In determining whether paragraph 8(c) contravenes public policy, it is appropriate to consider the intent behind the adoption óf Rule 4-5.6. The rule is intended to protect the ability of future clients to retain a lawyer of their choosing and to prohibit attorneys and their present clients and adversaries from limiting that ability by private agreement.
 
 See
 
 Fla. Ethics Op. 93-4 (“The prohibition contained in rule 4-5.6 seeks to protect the professional autonomy of lawyers as well as clients’ access to the lawyer of their choosing.”). While the right of a party to chose his or her attorney is deeply engrained in our jurisprudence, that right is not unlimited. A party does not have the right to an attorney possessing confidential information of the adversary so as to provide the party with an unfair informational or tactical advantage.
 
 See, e.g., Castellano v. Winthrop,
 
 27 So.3d 134 (Fla. 5th DCA 2010). The Rules Regulating the Florida Bar affirmatively restrict attorneys with “inside” knowledge from using it for the gain of other clients.
 
 See generally,
 
 R. Regulating Fla. Bar 4-1.6 (confidentiality of client information); 4-1.7 (conflict of interest; current client) 4-1.8 (conflict of interest; prohibiting use of client information to disadvantage of client); 4-1.9 (conflict of interest; former client).
 

 In the present case, it was alleged that Mager had not only been the manag
 
 *225
 
 ing partner for Garfinkel, P.A., but had also served as personal counsel for Alan Garfinkel, individually. Furthermore, ap-pellees expressly acknowledged in the settlement agreement that Mager’s services to Garfinkel had been “special, unique and extraordinary” and that he had acquired confidential information concerning Gar-finkel’s operations — “the use or disclosure of which could cause Garfinkel substantial losses and damages which could not be rqadily calculated and for which no remedy at law would be adequate.” The confidential information alleged to be possessed by Mager included financial data, accounting information, legal strategies, business plans, dealings with expert witnesses, and other information that potentially would give an adversary an unfair tactical advantage in litigation.
 

 Thus, this case involves the consideration of two competing public interests. First, as recognized by the trial court, public policy favors providing individuals with the right to retain an attorney of their choosing. However, there is a countervailing public interest in ensuring that a litigant is free from the risk of opposition by a lawyer once privy to that litigant’s confidences and who is able to use those confidences against that litigant.
 
 Greene v. Greene,
 
 47 N.Y.2d 447, 418 N.Y.S.2d 379, 391 N.E.2d 1355 (1979). In
 
 Greene,
 
 the plaintiff brought an action against the law firm of Finley, Kumble, et al., for breach of fiduciary duty, fraud, and other tort claims. Attorneys Grutman and Bjork were members of the law firm that was representing the plaintiff. They had previously been partners at Finley, Kum-ble, et ah, at the time some of the events underlying plaintiffs claims had taken place. The defendant law firm alleged that through their previous employment, attorneys Grutman and Bjork had gained confidential information related to plaintiffs claim. The
 
 Greene
 
 court found that disqualification of plaintiffs law firm was required. The court initially determined that as former partners in the defendant law firm, Grutman and Bjork owed the firm a fiduciary obligation similar to that owed by an attorney to his client. This was especially so with regard to Grutman who had been the defendant law firm’s managing partner. The court went on to state:
 

 Although it is usually recognized that a party to litigation may select an attorney of his or her choosing, this general right is not limitless. The attorneys may not accept employment in violation of a fiduciary relationship.... To hold otherwise would be to ignore the overriding public interest in the integrity of our adversary system.
 

 Id.
 
 at 1359.
 

 Here, the parties appear to have recognized these competing public interests within the agreement itself. Paragraph 8(b) of the settlement agreement contains the following language:
 

 The parties agree that the relevant pubr lie policy aspects of the covenants are the result of joint negotiation and that every effort was made to limit the restrictions placed upon Scott A. Mager to those that are reasonable and necessary to protect the legitimate business interests [of] Garfinkel, Alan B. Garfinkel and/or Alan B. Garfinkel, P.A.
 

 It is also noteworthy that no restrictions were placed on Mager’s ability to represent clients (including former clients of Garfinkel) except with regard to initiating or maintaining a lawsuit or claim against Alan B. Garfinkel, individually, or Alan B. Garfinkel, P.A. If the allegations of the complaint and second amended complaint are accepted as true, then the parties’ agreement reflects a reasoned effort to balance the aforesaid competing public in
 
 *226
 
 terests and would not be injurious to the public good or otherwise contrary to public policy.
 

 REVERSED and REMANDED.
 

 LAWSON and JACOBUS, JJ., concur.
 

 [1]
 

 . Garfinkel also argues that even if the settlement was void, it was error to apply the
 
 "in pari delicto "
 
 doctrine and dismiss the second amended complaint.
 
 See, e.g., Kulla v. E.F. Hutton
 
 &
 
 Co., Inc.,
 
 426 So.2d 1055, 1057 n. 1 (Fla. 3d DCA 1983) ("Where, by applying the rule, the public cannot be protected because the transaction has been completed, where no serious moral turpitude is involved, where the defendant i$ the one guilty of the greatest moral fault, and where to apply the rule would be to permit the defendant to be unjustly enriched at the expense of the plaintiff, the rule should not be applied.”). Because we find the settlement agreement did not contravene public policy, we find it unnecessary to address this issue.
 

 We further find appellees' cross-appeal to be without merit.