**CATTLEMEN'S INVESTMENT COMPANY, a Corporation, Plaintiff,**

v.

**George E. FEARS, Defendant,**

**Securities and Exchange Commission, Amicus Curiae.**

**Civ. No. 72–152.**

United States District Court, W. D. Oklahoma.

May 3, 1972.

J. Duke Logan, of Logan & Lowry, Vinita, Okl., and J. B. Bailey, Farmer, Woolsey, Flippo & Bailey, Inc., Tulsa, Okl., for plaintiff.

W. A. McWilliams, Reford Bond, and Reid Robison, Oklahoma City, Okl., for defendant.

James J. Sexton, III, Securities and Exchange Commission, Washington, D. C., amicus curiae.

## OPINION AND ORDER

EUBANKS, District Judge.

The complaint, filed March 2, 1972, alleges that defendant, George E. Fears (Fears), chairman of the board of directors, president, and the controlling stockholder of National Pioneer Insurance Co. (Pioneer), on October 31, 1971, was the beneficial owner of 120,596 shares, or 4.86%, of the outstanding shares of plaintiff, a security registered with SEC pursuant to Section 12(g) of the Securities Exchange Act; and that, during November and early December of 1971, Fears purchased in his own name and beneficially 177,004 additional shares, thereby increasing his holdings in excess of the 5% fixed by Section 14(d) of the Securities Act of 1934 as amended by the Williams Act of 1968. The complaint further alleges that Fears

> During the month of November 1971, and during the period of December 1–10, 1971, through his agents and certain employees of National Pioneer, was actively engaged in making tender offers for, or requests or invitations for tenders of, the Stock [of Cattlemen's] by telephone calls, use of the mails and personal visits without complying with the requirements of Section 14(d) of the Act and the rules and regulations issued by the Commission pursuant thereto, all in violation of Section 14(d) of the Act.

The plaintiff seeks [1] a judgment decreeing that the defendant has violated Section 14[d] of the Securities Act of 1934; [2] a preliminary injunction enjoining defendant from acquiring any additional shares of the common stock of plaintiff during the pendency of this action and temporarily enjoining defendant from the exercise of any voting rights of the shares owned by defendant during the pendency of this action; and [3] that defendant be enjoined, for a period of five years, from the acquisition of any additional shares of plaintiff and from exercising, for a like period of time, any voting rights of the shares owned by defendant.

On March 2, 1972, the Court entered a Temporary Restraining Order enjoining the defendant from exercising any voting rights of the shares owned by Fears, directly or indirectly, pending a hearing on the issuance of a temporary injunction and setting said hearing for March 7, 1972. At the hearing on the temporary injunction on March 7, 1972, the defendant did not deny any fact alleged in the complaint; rather, defendant argued the complaint failed to state a cause of action. Following the argument of counsel the Court vacated the temporary restraining order entered on March 2, 1972, and requested briefs on all matters, and fixed the time schedule for the submission of briefs.

The plaintiff's brief is devoted to the following propositions: [1] that plaintiff is a proper party to institute the action; [2] plaintiff has no adequate remedy at law; [3] and that defendant should be enjoined from additional purchase of the stock and from voting the stock acquired. In response thereto, defendant's brief argues [1] that plaintiff has no standing to bring this action; [2] that, even assuming standing to sue, the complaint does not state a cause of action; [3] that the complaint fails to state ground for equitable jurisdiction and injunctive relief; [4] that the balance of the equities favor the defendant; [5] that defendant's alleged actions did not, as a matter of law, constitute "tender offers"; and [6] that consolidation of the trial of the action on the merits with the hearing on the application for the issuance of preliminary injunction would be improper.

The complaint alleges a failure of the defendant to comply with Section 14 [d] of the Securities Exchange Act of 1934, as amended. The Williams Act was added to the Exchange Act on July 29, 1968. It has its genesis in the wave of cash tender offers that had become

increasingly popular in the years immediately preceding enactment. There was an increasing use of the cash tender offer to acquire control of corporations. Existing legislation did not require disclosure to investors of facts concerning the offeror. A need was felt to enact legislation which would require disclosure to shareholders not only by those making cash tender offers but also by substantial holders entering into the securities markets to acquire stock of a target company. Means were sought by Congress to help maintain honest securities markets and to insure that public investors have truthful information on which to make investment decisions. Accordingly, the Williams Act, effective July 29, 1968, required the filing of public information in response to prescribed questions, if a tender offer for an equity security of a publicly held company would result in beneficial ownership of more than ten [now five] percent of the securities of that class § 14 [d] (1).

The Rules and Regulations of the Securities Exchange Commission set forth in detail the information to be included in statements filed pursuant to the Rule. The information to be filed with the SEC with reference to tender offers includes the following: the identity and background of persons on whose behalf the purchases are being made; the source and amount of funds to be used and description of financing arrangements; the purposes of the purchase, and if one such purpose is to acquire control, a description of plans or proposals relating to any major changes in the company; and any contracts, arrangements or understanding with respect to any of the securities to be acquired.

The Rule has additional provisions designed to afford further protection to a tender offeree. For example, it gives a right of withdrawal of tendered shares for seven days after the first publication or transmission of the tender offer and at any time after 60 days from the date of the original offer; provides for pro rata acceptance of securities tendered within the first ten days of the offer (where more securities have been deposited than the tender offeror is bound to take up); and requires that any increase in the tender price shall be paid to all persons whose securities are taken up.

■ The statute does not define the phrase "tender for, or request or invitation for tenders of" securities. The Act is, however, a remedial statute and should be interpreted liberally to carry out the legislative intent.

[It is a] familiar cannon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes. The Securities Exchange Act quite clearly falls into the category of remedial legislation. Tcherepnin v. Knight, 1967, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564.

It is fundamental that a statute designed to protect the public, if its language permits, must be construed in the light of the legislative intent and purposes it sought to achieve. It is entitled to a broad interpretation so that its public purposes may be fully effectuated. Marriott v. National Mut. Gas Co., CA 10, 1952, 195 F.2d 462, 466.

■■ We think it clear that the purpose of The Congress, in the enactment of the legislation in question, is to provide investors who hold equity interests in public corporations, material information with respect to the potential impact of any effort to acquire control of a company, sufficient time within which to make an unhurried investment decision as to whether to dispose of or retain their securities, and to assure fair treatment of the investors. We deem it abundantly clear that there is an obligation on persons attempting to gain control of a corporation by means of tender offers to make the required filings and disclosures.

The activities of the defendant set out in the complaint and not denied by the defendant, i. e. an active and widespread

solicitation of public shareholders in person, over the telephone and through the mails, contain potential dangers which Section 14[d] of the statute is intended to alleviate. The defendant, in not complying with the statute, deprived shareholders of information prescribed by the Rule, which information was material to their investment decisions, and denied to them the fair treatment provided by other parts of Section 14[d]. In truth, the contacts utilized by the defendant seem even more designed than a general newspaper advertisement, the more conventional type of "tender offer," to force a shareholder into making a hurried investment decision without access to information, in circumvention of the statutory purpose.

■ The defendant resorts to legislative history in support of its contention that defendant made no "tender offer" within the meaning of the Act and Rules of the SEC. The plaintiff, with equal positiveness, resorts to the legislative history to show that the activities of the defendant did constitute "tender offers." When we consider the plain language of the statute and rules and the purposes to be served, we have no hesitancy in concluding that the activities of the defendant in making contact with plaintiff's shareholders by the use of the mails, telephone calls, and personal visits, for the purpose of purchasing their shares, constitute "tender offers for, or a request or invitation for tender offers of" their stock within the meaning of the statute.

Neither the brief of counsel nor the research of the Court has brought to light a case wherein the factual situation and the relief sought parallel the case at bar. Both parties rely on the same cases. But the issues and facts, or both, therein differ from the case at bar. The Court has read and has given careful consideration to the cited cases, cognizant, however, that the language of each one and the holding therein must be read in the context of facts there under adjudication and that the language of each opinion was not intended as an adjudication outside of the factual situation presented.

■ The plaintiff has standing to sue for injunctive relief. In Electronics Specialty Co. v. International Controls Corp., CA 2, 1969, 409 F.2d 937, a target corporation joined with others in an action to require an offeror to divest itself of stock in the target corporation acquired by stock tender offers and to refrain from voting the stock. The Court, speaking through Circuit Judge Friendly, held that in determining who has standing to enforce duties created by the statute, the Court's quest must be for what will best accomplish the purposes of the legislation. The Court held that a target corporation has standing to complain of violation by the offeror of the provisions of the SEC Act, as amended by the Williams Act, in connection with tender offers.

■ The defendant argues that injunctive relief should not be granted. And this even though defendant, on hearing on March 7, 1972, admitted that he did not comply with the statutory and regulatory requirements in advance of the making of tender offers and in advance of the acquisition of stock in the plaintiff corporation during the month of November and early December 1971. If such admission is not enough, it suffices to say that in view of the public interest in insuring fair practices and honest dealing in the acquisition of corporate shares by tender offers, a showing by plaintiff of irreparable injury in the usual sense is not a necessary prerequisite to the issuance of an injunction. United Egg Producers v. Bauer International Corp., D.C. SDNY, 1970, 311 F.Supp. 1375, 1385. As stated by Circuit Judge Friendly in Studebaker Corp. v. Gittlin, CA2, 1968, 360 F.2d 692:

> A plaintiff asking an injunction because of the defendant's violation of a statute is not required to show that otherwise rigor mortis will set in forthwith; all that "irreparable inju-

ry" means in this context is that unless an injunction is granted, the plaintiff will suffer harm which cannot be repaired. At least that is enough where, as here, the only consequence of an injunction is that the defendant must effect a compliance with the statute which he ought to have done before. P. 1385.

The Court may enjoin if there be no adequate remedy at law and irreparable injury will be suffered. In Bath Industries Inc. v. Blot, CA 7, 1970, 427 F.2d 97, the Court said:

> If defendant-appellants were in fact required to file statements pursuant to the Williams Act sometime near midsummer of October 1969, the filing of 13D Schedules in October, 1969, may well be insufficient to cure the failure to file earlier. The purpose of the filing and notification provisions is to give investors and stockholders the opportunity to assess the insurgents' plan before selling or buying stock in the corporation. It additionally gives them the opportunity to hear from incumbent management on the merit or lack of merit of the insurgents' proposals. If the defendant-appellant's late filing is sufficient, then no insurgent group will ever file until news of their existence and plan leak out and prompts a lawsuit. By that time it will be too late to avoid the evils which the Williams Act is designed to eliminate.

Both the plaintiff and the shareholders in the case at bar have been deprived of the information on which to make investment decisions which would have been afforded if the filing and notice provisions of the statute and the rule had been complied with. Nevertheless the defendant asserts a right to vote the stock acquired without compliance with the statute and the rule. The Court finds that the defendant should not be permitted so to do. Accordingly,

It is ordered that defendant George E. Fears be and he is hereby enjoined and restrained from voting all stock acquired by him during the months of November and December 1971 without prior compliance with Section 14[d] of the Securities Exchange Act and Rule 14d of the SEC.

It is further ordered that, pursuant to Rule 65[a] (2) F.R.Civ.P., the trial of the action on the merits be and is hereby consolidated with the hearing of the application for further injunctive relief.