Karl ZUCKERMAN, etc., Plaintiff,

v.

Rolf G. FRANZ, et al., Defendants.

No. 82–6432–CIV–JAG.

United States District Court,
S.D. Florida, N.D.

Oct. 12, 1983.

Curtis Trinko, New York City, for plaintiff.

Stewart A. Merkin, Michael Nachwalter, William H. Stiles, Alan Kluger, Richard M. Bales, Miami, Fla., for defendants.

## ORDER

GONZALEZ, District Judge. ·

THIS CAUSE has come before the Court for review upon the Defendants, Heinicke Instruments Company, Wilbur L. Morrison, Jacob T. Carwile, Carl A. Jacobson, Chester A. Warner, Rolf G. Franz, Alberto L. Vega and Rudolph Israel's Motion to Dismiss, or Motion to Strike or for more Definite Statement. The court has considered the record and heard extensive oral argument by counsel.

This is a securities class action brought by plaintiff, Karl Zuckerman against the individual members of the Board of Directors of Heinicke Instruments Company and Heinicke itself for violations of Section 10(b) [15 U.S.C. § 78j(b)] and 14(e) [15 U.S.C. § 78n(e) of the Securities Exchange Act of 1934, as well as Rule 10b–5 [17 C.F.R. 240 10b–5] and Rule 10b–6 [17 C.F.R. 240 10b–6], promulgated pursuant to Section 10b–6.

The complaint alleges a fraudulent scheme on the part of the defendants from early 1980 through January 15, 1982 which materially misled and deceived the investing public as to the true financial condition of Heinicke. Plaintiff alleges said scheme was perpetrated by the public filings, press releases, and other public communications issued by Heinicke and its Board of Directors, as well as the reaction of the securities market to these filings, releases and communications.

As a result of this alleged scheme, the plaintiff and other class members allege that they have been substantially damaged.

Defendants have filed a motion to dismiss the plaintiff's complaint or in the alternative, motion to stay the proceedings, and/or motion to strike or for a more definite statement, on the grounds that plaintiff fails to state a claim under Section 10(b) due to the absence of individual reliance on documents issued by Heinicke; and that plaintiff lacks standing since he failed to allege being defrauded in connection with the purchase or sale of securities.

Defendants have also alleged that the plaintiff failed to plead fraud with sufficient particularity to satisfy Federal Rule of Civil Procedure 9(b). In addition, defendants allege that plaintiff's Section 14(e) claim fails to allege the existence of a tender offer or reliance upon the document in support of said tender offer.

Defendants stress the reliance requirement as an essential element in a 10b–5 case. Defendants rely primarily on *Shores v. Sklar*, 647 F.2d 462, 468 (5th Cir.1981), *U.S. app. pdg.* 455 U.S. 936, 102 S.Ct. 1424, 71 L.Ed.2d 646 (1982) in arguing that individual reliance upon the documents and communications issued by Heinicke must be alleged in the complaint.

*Shores* involved a class action of revenue bond purchasers seeking to rectify a default upon said bonds. The claims in *Shores* as in the instant action, were premised upon all three subsections of Rule 10b–5, 17 C.F.R. § 240, 10b–5(a)–(c).

The crucial document in *Shores* was the Offering Circular for the revenue bonds. The plaintiff's claims in *Shores* were based upon misrepresentation and omissions in the Offering Circular, although the plaintiff never alleged any reliance upon the document. The plaintiff also asserted claims involving a fraudulent scheme regarding the issuance of the bonds in question which scheme involved misrepresentations and omissions. The Fifth Circuit quickly differentiated the requirements for reliance in misrepresentation cases, as opposed to omission or nondisclosure cases.

The elements of a classic misrepresentation action are: (1) the defendant must make a false representation of a material fact, (2) knowing its falsity and intending that the plaintiff rely on it, (3) the plaintiff must justifiably rely on it, and (4) suffer damage as a result. *See* III L. Loss, Securities Regulation 1431 (1961); *Dupuy v. Dupuy*, 551 F.2d 1005, 1014 (5th Cir.1977). Because reliance is so difficult to prove when a defendant has failed to disclose a material fact rather than misrepresenting it, the Supreme Court has allowed the trier of fact to presume reliance in an omission case where the plaintiffs could justifiably expect that the defendants would disclose material information. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). *Ute* did not eliminate reliance as an element of a 10b–5 omission case; it merely established a presumption that made it possible for the plaintiffs to meet their burden.

The Fifth Circuit in *Shores* dismissed the plaintiff's misrepresentation claims based upon the Offering Circular since the plaintiff admitted that he had never read or otherwise relied upon the Offering Circular. The Court allowed the remainder of the plaintiff's claims regarding misrepresentations and nondisclosures to stand, however, since said claims involved an entire fraudulent scheme, with the Offering Circular only comprising one portion of same. Citing *Blackie v. Barrack*, 524 F.2d 891, 906 (9th Cir.1975), Fifth Circuit found that the concept of reliance upon the integrity of the securities market was sufficient to sustain the remainder of plaintiff's claims. It held that "the requisite element of causation in fact would be established if the scheme was intended to and did bring the Bonds onto the market fraudulently and (plaintiff) proved he relied on the integrity of the offerings of the securities market. His lack of reliance on the Offering Circular, only one component of the overall scheme, is not determinative." 647 F.2d at 469.

The Fifth Circuit in *Shores* concluded that the securities laws are intended to protect investors, not merely to promote full disclosure to foster informed investment decisions. *Shores, supra*, 647 F.2d at 470. The court stated:

> The securities laws allow an investor to rely on the integrity of the market to the extent that the securities it offers to him for purchase are entitled to be in the market place. 647 F.2d 471.

The Fifth Circuit in *Shores, supra*, then stated its opinion of the "fraud on the market" theory in regard to the element of reliance in a Rule 10b–5 action.

> The dissent asserts that we adopt a "new theory" because we separate Bishop's claim under 10b–5(2) that the Offering Circular was misleading from his claim under 10b–5(1) and (3) that defendants' fraudulently marketed Bonds caused his loss. It is not our "theory" but the words of rule 10b–5 which confer the right of action we hold Bishop is entitled to try to prove. Contrary to the assertion of the dissent, neither this court nor the Supreme Court has held these parts of the rule do not mean what they say. Misrepresentation and omission cases under 10b–5(2) which, as we do, require reliance on the document making the

misrepresentation or omitting a material fact are inapposite to a case in which the buyer relied on the integrity of the market to furnish securities which were not the product of a fraudulent scheme. This circuit has said so, and other circuits have also. There is no Supreme Court precedent to the contrary [1]. *Shores, supra,* 647 F.2d 471.

The Court then stated at 647 F.2d 472: Whenever the rule 10b–5 issue shifts from misrepresentation or omission in a document to fraud on a broader scale, the search for causation must shift also. The "reliance" that produces causation in the latter type of case cannot come from reading a document. It may arise from the duty to speak as in *Ute,* a scheme to manipulate the market at a time when a merger had forced a sale as in *Schlick,* a scheme to inflate common stock prices by misleading statements as in *Rifkin,* or a claim by a bond buyer that he relied on the market to provide securities that were not fraudulently created as we have here. The most significant common thread in all these precedents is that rule 10b–5 is not limited to a narrow right to recover for knowing fraudulent misrepresentations or omissions in disclosure documents which mislead a securities buyer. The rule is recognized also to provide the basis for a federal cause of action for more elaborate, intentional schemes which deceive or defraud purchasers of securities.

■ Accordingly, defendants' reliance on the *Shores* decision is misplaced since plaintiff's claims are not solely limited to individual documents, but to all aspects of the fraudulent scheme alleged within the complaint. Although Paragraph 20 of the complaint does make reference to certain public filings by Heinicke, the allegations clearly state that these documents were only one portion of the fraudulent scheme. It then sets forth particularized information that was misrepresented or omitted in the course of defendants' dealings with the investing public. These allegations are premised upon all three subsections of Rule 10b–5, as indicated in paragraphs 19 and 22. Thus, specific reliance upon individual documents by the plaintiff is unnecessary in setting forth these causes of action.

The acceptance of the "fraud on the market" theory within the Fifth and Eleventh Circuits now appears to be widely acknowledged. *See Lipton v. Documation, Inc.,* [Current] Fed.Sec.L.Rep. (CCH) § 98, 788 (M.D.Fla.1982). Accordingly, this Court finds that the Plaintiff has satisfied his burden to set forth the material elements of a section 10(b) claim.

■ The defendants also maintain that plaintiff does not have standing to bring a Section 10(b) action against the defendants. This court finds, however, that plaintiff does have standing in that he qualifies as a "purchaser or seller" under *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Plaintiff has sufficiently plead the nexus between his purchases and/or sales, and the fraudulent scheme perpetuated by the defendants which resulted in damage to him.

Defendants further seek dismissal of plaintiff's complaint upon the grounds that it fails to fulfill the pleading requirements of Federal Rules of Civil Procedure 9(b), which states:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally.

■ To fulfill these requirements, a complaint must afford defendants fair notice of the nature of plaintiff's claim and the grounds upon which it is based, *Credit & Finance Corp. Ltd. v. Warner & Swasey Co.,* 638 F.2d 563, 567 (2d Cir.1981) and must be based upon a reasonable belief

---

**1.** The Fifth Circuit in *Shores, supra,* cited to *Rifkin v. Crow,* 574 F.2d 256 (5th Cir.1978), as supportive authority for the above holding, as well as *Blackie v. Barrack,* 524 F.2d 891 (9th Cir.1975) and *Schlick v. Penn Dixie Cement Corp.,* 507 F.2d 374 (2d Cir.1974).

**356**

that a wrong has been committed. *Seqal v. Gordon,* 467 F.2d 602, 607–608, (2d Cir. 1972). The Court finds that the plaintiff's complaint satisfies both of these objectives. The complaint does not simply assert fraudulent conduct, but reasonably details the factual bases for its various allegations.

All that is required under Rule 9(b) of a plaintiff alleging fraud in connection with a securities transaction, is that the person charged with fraud will have "a reasonable opportunity to answer the complaint" and "adequate information to frame a response." *Ross v. A.H. Robins Co., Inc.,* 607 F.2d 545, 557–558 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *Denny v. Carey,* 72 F.R.D. 574 (E.D.Pa.1976). The complaint is sufficient for the purposes of Rule 9(b) "if it alleges that securities fraud was committed in connection with identified acts or omissions." *Felton v. Walston and Co., Inc.,* 508 F.2d 577, 582 or 7 (2d Cir.1974).

In *Xaphes v. Shearson, Hayden, Stone, Inc.,* 508 F.Supp. 882, 887 (S.D.Fla.1981), this Court affirmed the necessity for reconciliation between the requirements of Federal Rule of Civil Procedure 8(a), (that the pleadings contain a "short and plain" statement of the claim or defense and [that] each averment should be "simple, concise and direct") and the specificity requirements of Rule 9(b), in determining that the complaint before it had satisfied both sets of requirements. "So long as the complaint affords defendant notice of the claims against him and evidences a reasonable belief on plaintiff's part that his complaint has merit, Rule 9(b) is satisfied and the philosophy of Rule 8 is unencumbered." *Gilbert v. Bagley,* 492 F.Supp. 714 at 726, [1980 Transfer Binder] Federal Securities Law Reporter, (CCH) § 93, 503 at 97, 907 (M.D.N.C.1980).

Defendants rely on *Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, [Current] Federal Securities Law Reporter (CCH) § 98, 697 (2d Cir.1982), in their assertion that the plaintiff's allegations of wrongful conduct were never particularized.

In *Decker,* plaintiff's complaint failed to provide adequate factual substantiation for its accusations of fraudulent activity, and failed to allege time, place, and manner in which alleged misrepresentations occurred in connection with Massey-Ferguson's public reports, and, in numerous instances, failed to demonstrate the materiality of any alleged misrepresentation. In contrast, plaintiff's complaint sets forth detailed factual basis for its claims in sufficient particularity to meet Rule 9(b)'s requirements.

■ Plaintiff's complaint alleges that defendants issued certain enumerated public documents which contained material misrepresentations or omissions. The complaint identifies those documents and specifies the information that is alleged to be misrepresented or omitted. The complaint further identifies the cause of the misrepresentations or omissions.

The individual defendants, in their capacities as officers and/or members of the Board of Directors of Heinicke, are alleged to have had the responsibility for the on-going management of Heinicke, and the power and duty to influence and control the policies and actions of Heinicke, including the preparation of financial statements filed with the S.E.C. and disseminated to the investing public. The individual defendants are alleged to have knowingly or recklessly caused, participated in and approved a common pattern of conduct which operated as a fraud upon the plaintiff and other class members.

In *Lipton v. Documentation, Inc., supra,* [Current] Fed.Sec.L.Rep. (CCH) § 98, 788, at 94 040–41, quoting from *Barotz v. Monarch General, Inc.,* [1974–75 Transfer Binder] Fed.Sec.L.Rep. (CCH) § 94, 933 (S.D.N.Y.1975), the Middle District of Florida recently rejected defendants' argument that a complaint under Section 10(b) must specify, prior to discovery, the precise role played by each director of a corporate defendant in the preparation or dissemination of false and misleading documents in stating:

In my view, the arguments here are not particularly impressive. To begin with, it is to be presumed that Monarch's directors acted as a group in approving the reports in question. Further, plaintiff cannot be expected to be privy to the directors' meeting discussions, either singularly or as a group. For these reasons any overly literal application of Rule 9(b) ought to be avoided. Of equal importance is the general rule that Rule 9(b) does not require particularization of allegations of fraudulent intent or scienter. 2A *Moore's Federal Practice,* § 9.03 at 1937.

For the same reasons, this Court finds the complaint to sufficiently allege the role of each individual defendant in the fraud.

The case authority relied upon by defendants in support of their theory that the wrongdoing of each individual defendant must be particularized in the complaint are inapposite, for said decisions are shareholders' derivative suits in which the wrongful conduct of individual defendants forms the basis of the claims set forth by the plaintiff therein seeking recovery on behalf of the corporation, not the public shareholders of said corporation.

Defendants further contend that there are no allegations in plaintiff's complaint identifying the underlying circumstances by which the defendant directors knew that Heinicke's public documents were false and misleading, and that such allegations are necessary where plaintiff is to generally aver scienter.

This Court finds that the Board of Directors, acting as a group, is responsible for approval of the public documents at issue, and the complaint sets forth the manner in which those reports were misleading or false. In *Xaphes v. Shearson, Hayden, Stone, Inc., supra,* 580 F.Supp. at 887, this Court held that "an allegation that defendant knew or should have known of the misstatements in the disjunctive is sufficient as a matter of pleading." *Id.* at 887.

For the foregoing reasons, this Court finds that the allegations of plaintiff's complaint in Counts I, II, and III are sufficient to fulfill the particularity requirements of Rule 9(b).

This Court further finds that Count III of Plaintiff's Complaint sets forth a justiciable claim under Section 14(e) of the Securities Exchange Act of 1934.

Defendant contends that Section 14(e) applies solely to formal tender offers. The language of Section 14(e), however, sets forth broader coverage than the limited construction offered by the defendants:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative.

It is the near unanimous conclusion of the courts and commentators that Section 14(e) was left vague by Congress in regard to the meaning of a "tender offer" so as to enable the courts to consider each litigable situation on its unique facts. *Smallwood v. Pearl Brewing Company,* 489 F.2d 579, 596–597 (5th Cir.), *cert. denied,* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974).

In *Kennecott Copper Corporation v. Curtiss-Wright Corporation,* 449 F.Supp. 951, 961 (S.D.N.Y.), *modified on other grounds,* 584 F.2d 1195 (2d Cir.1978), the Court concluded:

The term "tender offer" was deliberately left vague by Congress and the SEC. It is now well settled, however, that the term embraces not only conventional tender offers formally announced by

communications to shareholders, but also more subtle activities designed to lead to an offer of shares. *Cattlemen's Investment Co. v. Fears*, 343 F.Supp. 1248, 1251–52 (W.D.Okl.1972).

■ In the instant case plaintiff alleges that Tyco publicly announced that it was seeking to acquire Heinicke, preferably through a cash merger proposal at $13 per share for all outstanding shares of Heinicke not then owned by Tyco. Thereafter it is alleged that Heinicke's Board of Directors stated their belief that the cash merger proposal was "friendly" and Tyco reaffirmed this by stating that a formal tender offer would only be forthcoming if Heinicke's Board of Directors rejected Tyco's cash merger proposal. Plaintiff contends that Heinicke's Board of Directors tacitly accepted Tyco's merger proposal in August, 1981 and indicated that said proposal would be submitted for shareholder approval shortly after the September 10, 1981 eligibility cut-off date.

Upon consideration of the eight factors set forth by the Securities and Exchange Commission in determining whether acquisitions constitute a tender offer under the applicable provisions of the Williams Act, this court finds that the alleged cash merger proposal at issue in this cause satisfies the following factors:

1. Whether there is an 'active and widespread solicitation of public shareholders' for shares of an issuer;

2. Whether the solicitation is made for a substantial percentage of the issuer's stock;

3. Whether the offer to purchase is made at a premium over the prevailing market price;

4. Whether the terms of the offer are firm rather than negotiable;

5. Whether the offer is contingent on the tender of a fixed minimum number of shares, and perhaps, subject to the ceil-

ing of a fixed maximum number to be purchased;

6. Whether the offer is open for only a limited period of time;

7. Whether the offerees are subjected to pressure to sell their stock; and

8. Whether public announcements of a purchasing program concerning the target company precede or accompany a rapid accumulation of large amounts of target company securities.[2]

*Hoover Company, supra*, § 97, 107 at 96, 148.

According to the allegations in the complaint, Tyco's cash merger proposal was well publicized and constituted a widespread solicitation. In addition, the merger proposal sought 100% of the stock at a premium over the average market price during the affected period. The terms of the proposal were firm, and was contingent upon the approval of a simple majority of shareholders. Moreover, since the voting on the merger proposal was expected shortly after the settlement was announced, and a September 10, 1981 deadline for eligibility was set, shareholders were under time pressure to evaluate their positions with respect to their Heinicke stock. Finally, the solicitation was preceded by a rapid accumulation of substantial amounts of Heinicke's securities by Tyco. In conclusion, this Court finds that the merger proposal at issue falls within the parameters of Section 14(e).

■ This court also finds that Plaintiff has standing to assert a Section 14(e) claim. Section 14(e) does not require a plaintiff to have been subject to a formal tender offer before becoming eligible for protection under said statute. Several courts have held that both those who tendered their shares and those who did not tender have standing to sue under Section 14. *Smallwood v. Pearl Brewing Co., supra; Wellman v. Dickinson*, 475 F.Supp. 783, 817 (S.D.N.Y. 1979); *Spielman v. General Host Corp.*,

---

**2.** These factors have been stated by the Securities and Exchange Commission in several actions. An extensive analysis of these factors is contained in *Brascan Ltd. v. Edper Equities Ltd.*,

477 F.Supp. 773 (S.D.N.Y.1979) and *Hoover Company v. Fuga Industries, Inc.*, [1979 Transfer Binder] Fed.Sec.L.Rep. (CCH) § 97, 107 (N.D. Ohio 1979).

402 F.Supp. 190, 192 n. 2 (S.D.N.Y.1975), *aff'd,* 538 F.2d 39 (2d Cir.1976); *Dyer v. Eastern Trust and Banking Company,* 336 F.Supp. 890 (D.Me.1971).

The arguments of the defendants regarding the requirements of individual reliance upon a formal tender offer are inapplicable to the instant case. The United States Supreme Court has stated that a plaintiff need not demonstrate individual reliance in a case involving primarily a failure to disclose. *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–154, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972); *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). The plaintiff in this case has alleged a failure on the part of the defendants to disclose material information, as well as certain misrepresentations.

Defendants' reliance upon *Panter v. Marshall Field & Co.,* 646 F.2d 271 (7th Cir.1981), is misplaced due to the significant factual differences from the issues at bar. In *Panter,* the plaintiffs failed to present a causal nexus between the defendants' wrongful conduct or omissions and the withdrawal of the tender offer or solicitation. In this case, plaintiff has alleged that the defendants' conduct was directly responsible for the delay in culmination of the proposed merger, as well as the ultimate termination of said offer.

In addition, in *Panter, supra,* the Seventh Circuit recognized that the Williams Act protected shareholders from the situations wherein they are pressured to make ill-considered decisions, as well as situations where the solicitations, combined with a premium price and time constraints, created a tender offer. *See Panter, supra,* 646 F.2d at 286; *Wellman v. Dickinson, supra; S–G Securities, Inc. v. Fuqua Investment Co.,* 466 F.Supp. 1114 (D.Mass. 1978).

██ In response to defendants' request for a more definite statement as to plaintiff's Rule 10b–6 claim, this Court finds that the plaintiff's pleadings are sufficient to put the defendants on notice. Plaintiff's claim pursuant to Rule 10b–6 concerns alleged undisclosed participation by Heinicke directors in trading schemes designed to inflate Heinicke's per share value. Thus, prior to the conduct of discovery on this issue, plaintiff is only able to set forth the basic elements of this claim.

This court also finds that plaintiff has fully complied with Local Rule 19 of the Southern District of Florida regarding class actions. A review of the portion of plaintiff's complaint that sets forth his class action allegations, and the pleading requirements contained in Local Rule 19 fail to disclose any of the purported deficiencies raised by defendants.

The defendants alternative Motion for Stay pending the disposition of *Price Waterhouse v. Panzirir,* 663 F.2d 365 (2d Cir.1981) *cert. granted,* 458 U.S. 1105, 102 S.Ct. 3481, 73 L.Ed.2d 1365 (1982) has been rendered moot by the Supreme Court's acceptance of a suggestion of mootness in that case.

In conclusion, this court finds that the plaintiff's complaint sets forth a claim upon which relief can be granted under Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b–5 promulgated thereunder; and that plaintiff has sufficient standing to bring a Section 10(b) action against the defendants.

This Court further finds that plaintiff has plead fraud with sufficient particularity to comply with Federal Rules of Civil Procedure 9(b).

Finally, this Court finds that Count III of plaintiff's complaint sets forth a justifiable Claim under Section 14(e) of the Securities Exchange Act of 1934 and that plaintiff need not demonstrate individual reliance in a case involving a failure to disclose.

For all of the foregoing reasons, it is accordingly

ORDERED AND ADJUDGED as follows:

(1) That the defendants' Motion to Dismiss be, and the same is hereby DENIED. The defendants shall be required to file an

answer to plaintiff's complaint within twenty (20) days of the date of this Order.

(2) That the defendants' Motion to Strike and/or for a More Definite Statement be, and the same is hereby DENIED without prejudice to renew after the conduct of discovery on plaintiff's 10b–6 claim.

(3) That the defendants' Motion to Stay be, and the same is hereby DENIED AS MOOT.