934 So.2d 501 (2005)
FLORIDA WINDSTORM UNDERWRITING, etc., Appellant,
v.
Anil GAJWANI, et al., Appellees.
No. 3D04-1392.
District Court of Appeal of Florida, Third District.
May 11, 2005.
*502 Colodny, Fass, Talenfeld, Karlinsky & Abate, Maria Elena Abate, Fort Lauderdale, and Sandy P. Fay, for appellant.
Mintz, Truppman, Clein & Higer, and Keith Truppman, Miami; Conroy Simberg, Ganon, Krevans & Abel and Hinda Klein, Hollywood, for appellees.
Before GERSTEN, SHEPHERD, and ROTHENBERG, JJ.
ROTHENBERG, Judge.
Appellant, Florida Windstorm Underwriting Association (FWUA), appeals a final summary judgment entered against it in favor of plaintiffs, Anil Gajwani and Suresh Gajwani. The Gajwanis cross appeal a final summary judgment entered against them in favor of Lexington Insurance Company (Lexington). We reverse the summary judgment entered against FWUA and dismiss the cross appeal.
Anil Gajwani and Suresh Gajwani each owned a house and maintained a homeowner's insurance policy through Lexington and a windstorm insurance policy through FWUA. The houses were located next door to each other, and both suffered "wind-driven rain" damage when Hurricane Irene struck South Florida in 1999. In the instant case, the evidence presented indicated that rain entered the respective homes through window and sliding glass door openings, and by seeping through second floor patio tiles and cracks in the stucco. The Gajwanis filed claims with both FWUA and Lexington, each of which denied their claims. FWUA denied coverage based on the wind-driven rain exclusion of its policy. Lexington denied coverage *503 based on an exclusion in its policy which stated that it did not insure for loss caused directly or indirectly by a windstorm.
On February 1, 2000, after the incidents in question, the Florida Department of Insurance issued a bulletin regarding wind exclusion endorsements, stating, in part:
While individual policy language would have to be considered in context, the Department's approval of wind exclusion endorsements has been predicated on the premise that the only coverage that can properly be excluded under the endorsement is that which is provided by the Florida Windstorm Underwriting Association.
The misapplication of the wind exclusion endorsement and denial of claims for structural damage caused by rain that enters a structure through an opening not created directly or indirectly by wind, appears to present an unfair trade practice, violative of Part IX of Chapter 626 of the Insurance Code, subjecting insurers to administrative fines and other appropriate administrative actions.
On August 24, 2000, FWUA issued an announcement that it would begin covering wind-driven rain damage, effective August 21, 2001. It noted that "Prior to the endorsement, the FWUA provided coverage that required the direct force of wind to cause an opening before coverage was provided. This endorsement will provide coverage to the interior portion of a building. . . in the absence of damage to the exterior of the building that creates an opening."
After FWUA and Lexington denied coverage, the Gajwanis each filed an action for damages against Lexington, and then amended their complaints, adding a claim for declaratory relief, and adding FWUA as a defendant. Pursuant to an agreed order, a neutral umpire was appointed to appraise the damages to the homes. The order specifically stated that by agreeing to the appraisal, the parties did not waive any coverage defenses. The lower court subsequently entered an order confirming the appraisals. Each party then filed a motion for summary judgment. The lower court held a hearing at which it concluded that FWUA was responsible for coverage because (1) it tacitly admitted by the later amendment of its policy that its wind-driven rain exclusion was inappropriate; (2) FWUA participated in the appraisal process; and (3) the exclusion is void as against public policy.
On April 28, 2004, the court entered a written order and final summary judgment in favor of the Gajwanis against FWUA, as well as an order and final summary judgment in favor of Lexington against the Gajwanis. The orders and final summary judgments were combined into one document, titled:
ORDER AND FINAL SUMMARY JUDGMENT IN FAVOR OF ANIL GAJWANI AND SURESH GAJWANI AGAINST FLORIDA WINDSTORM UNDERWRITING ASSOCIATION

and
ORDER AND FINAL SUMMARY JUDGMENT IN FAVOR OF LEXINGTON INSURANCE COMPANY AND AGAINST ANIL GAJWANI, SURESH GAJWANI AND FLORIDA WINDSTORM UNDERWRITING ASSOCIATION.
FWUA timely filed its notice of appeal on May 27, 2004. The Gajwanis did not file a notice of appeal, but instead, filed a notice of cross-appeal on October 5, 2004.
As a preliminary matter, we must examine the validity of the cross-appeal. The cross-appeal seeks to reverse the summary judgment entered in favor of Lexington *504 against the Gajwanis, asserting that if this court determines that the Gajwanis' damages are not covered under the FWUA policy, then they must be covered under the Lexington policies. Lexington has moved to dismiss the cross-appeal, arguing that it is, in fact, not a cross-appeal, but rather an untimely appeal from a separate and different judgment than that appealed by FWUA. We agree with Lexington, based on our decisions in Breakstone v. Baron's of Surfside, Inc., 528 So.2d 437 (Fla. 3d DCA 1988) and Webb General Contracting, Inc. v. PDM Hydrostorage, Inc., 397 So.2d 1058 (Fla. 3d DCA 1981).
In Webb, Webb, PDM Hyrdrostorage, and Federal Insurance Company were co-defendants in a lawsuit. Id. at 1059. Webb cross-claimed against PDM and Federal alleging breach of contract, and PDM and Federal cross-claimed against Webb seeking indemnification for legal costs incurred in defending the suit against the plaintiff. Id. The trial court entered a final summary judgment against Webb in favor of PDM and Federal on the breach of contract claim. On the same day, the trial court entered a final judgment in favor of PDM and Federal against Webb on their indemnity claim. Id. Webb timely appealed the judgment entered against it. Id. After the time for filing an appeal had passed, PDM and Federal filed a notice of cross-appeal seeking review of the judgment entered against them. Webb moved to dismiss the cross-appeal, and we granted the motion. We explained:
The rule allowing for a cross-appeal contemplates an appeal from the same judgment from which the original appeal is taken. . . . The function of a cross-appeal is to call into question error in the judgment appealed, which, although substantially favorable to the appellee, does not completely accord the relief to which the appellee believes itself entitled. It is not the function of a cross-appeal to seek review of a distinct and separate judgment, albeit rendered in the same case below, favorable to the appellant.
Id. at 1059-60.
In Breakstone, two defendants appealed a final judgment entered against them, and the plaintiff attempted to cross-appeal an order denying its motion for attorney's fees. 528 So.2d at 438. We granted the defendants' motion to dismiss the cross-appeal, quoting the above statement from Webb, and further explaining:
This court's jurisdiction to entertain an appeal is invoked solely by the notice of appeal which must timely seek review of an appealable trial court order or orders.... The notice of cross appeal, on the other hand, is not a jurisdiction-invoking document, but instead is in the nature of a cross assignment of error.. . . It therefore follows that the cross appeal must necessarily "piggy back" jurisdictionally on the notice of appeal, and is, accordingly, confined to those trial court orders or rulings adverse to the appellee which either "merge" into or are an inherent part of the order or orders which are properly under review by the main appeal. . . .
Id. at 439.
Following our decisions in Webb and Breakstone, the First District Court of Appeal decided Sun Bank of Gainesville v. O'Steen Brothers, Inc., 634 So.2d 262 (Fla. 1st DCA 1994). That case involved an action against Sun Bank and the Florida Board of Regents. The trial court entered a single final summary judgment in favor of the plaintiff against Sun Bank and in favor of the Board of Regents against the plaintiff. Sun Bank appealed the judgment entered against it in the plaintiff's favor, and the plaintiff cross-appealed the judgment entered against it in the Board *505 of Regents' favor. The Board of Regents moved to dismiss the cross-appeal, relying on Webb and Breakstone. However, the First District Court of Appeal distinguished Webb and Breakstone because they both involved two separate judgments, while Sun Bank involved a single judgment disposing of two separate claims. It, therefore, denied the motion.
We respectfully disagree with the reasoning of the First District Court of Appeal. We do not believe that whether separate claims are disposed of by one order or two should determine whether a cross-appeal is appropriate. In Webb, the lower court, which entered two final summary judgments on the same day in two separate orders, 397 So.2d at 1059, could just as easily have issued them in a single order. Similarly, in Sun Bank, and in the instant case, the lower court could have entered two separate orders disposing of the two separate claims, rather than combining them into one order. Whether the lower court happens to issue one order or two when disposing of multiple claims should not determine our jurisdiction to entertain a cross-appeal.
Instead, we believe that the principles set forth in Webb and Breakstone are controlling. Under those cases, a cross-appeal is appropriate if it seeks to review an order or judgment that is merged into or is an inherent part of the order or judgment properly under review by the main appeal. Breakstone, 528 So.2d at 439. However, a cross-appeal is not appropriate if it seeks to review an order or judgment that is separate and distinct from the order or judgment under review by the main appeal. Webb, 397 So.2d at 1059-60. We do not believe that the judgment entered against the plaintiff in this case in favor of one defendant, is an inherent part of the order entered against the other defendant in favor of the plaintiff. We believe that they are separate and distinct judgments, even if they happen to be combined into one document.[1]
We, therefore, conclude that we do not have jurisdiction to consider the Gajwanis' cross-appeal of the judgment entered against them in favor of Lexington, and hereby dismiss the Gajwanis' cross-appeal. If we had jurisdiction to consider the cross-appeal, we would nevertheless affirm, for the same reasons that we reverse the judgment entered against FWUA, which we will now discuss.
The standard of review of a summary final judgment is de novo and requires viewing the evidence in the light most favorable to the non-moving party. Collections, USA, Inc. v. City of Homestead, 816 So.2d 1225, 1227 (Fla. 3d DCA 2002). Summary judgment is proper only if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Id.
In determining whether the trial court erred in granting summary judgment against FWUA, we first examine the relevant exclusionary language of the policy. The wind-driven rain exclusion states:
We will not pay for loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, sleet, sand or dust whether driven by wind-storm *506 or not, unless the direct force of Hurricane, other Wind, or Hail damages the building or structure causing an opening in the roof or wall and the rain, snow, sleet, sand or dust enters through this opening.
The only evidence presented below was that the rain which entered the Gajwanis' homes was driven through window and sliding glass door openings, and seeped through second floor patio tiles and cracks in the stucco. The Gajwanis conceded that they could not offer any evidence of entry through openings in the roof or walls caused by Hurricane Irene. The FWUA policy clearly and unambiguously excludes coverage for the type of damage suffered by the Gajwanis. As the insured has the burden to prove an exception to an exclusion contained within an insurance policy, see LaFarge Corp. v. Travelers Indemnity Co., 118 F.3d 1511, 1516 (11th Cir.1997); Hudson Ins. Co. v. Double D Management Co., Inc., 768 F.Supp. 1542, 1545 (M.D.Fla. 1991), and the Gajwanis did not offer any evidence to support an exception to the unambiguous exclusion in the policy, they clearly did not meet their burden.
The Lexington policy also clearly and unambiguously excludes coverage for the damage suffered by the Gajwanis, stating:
We do not insure for loss caused directly or indirectly by:
a. The peril of windstorm or hail; or
b. The peril of windstorm during a hurricane.
Therefore, the damages suffered by the Gajwanis were not covered under either of their insurance policies.
Notwithstanding the clear and unambiguous language of the policy, the lower court found that FWUA was responsible for covering the Gajwanis' damage because FWUA later amended its policies to cover wind-driven rain damage, FWUA participated in the damage appraisal of the Gajwanis' homes, and the wind-driven rain exclusion is against public policy. As to FWUA's subsequent amendment to its policies, we agree with FWUA that the fact that it modified its policies to delete the wind-driven rain exclusion nearly a year after the loss in question is irrelevant to the case at issue, as the lower court was required to consider the plain language of the policy at the time of the loss. As to FWUA's participation in the appraisal process, such participation does not require it to cover the Gajwanis' damage, as the order appointing an appraisal umpire specifically stated that by agreeing to the appraisal, the parties did not waive any coverage defenses. See State Farm Fire and Cas. Co. v. Licea, 685 So.2d 1285 (Fla.1996).
The lower court's finding that FWUA's wind-driven rain exclusion violates public policy requires additional analysis. The court should not strike down a contract, or a portion of a contract, on the basis of public policy grounds except in very limited circumstances. As stated in Banfield v. Louis, 589 So.2d 441 (Fla. 4th DCA 1991):
When a particular contract, transaction, or course of dealing is not prohibited under any constitutional provision, statutory provision, or prior judicial decision, it should not be struck down on public policy grounds unless it is "clearly injurious to the public good" or "contravene[s] some established interest of society."
. . .
Courts, therefore, should be guided by the rule of extreme caution when called upon to declare transactions void as contrary to public policy and should refuse to strike down contracts involving private relationships on this ground, unless it be made clearly to *507 appear that there has been some great prejudice to the dominant public interest sufficient to overthrow the fundamental public policy of the right to freedom of contract between parties sui juris.

(quoting Bituminous Casualty Corp. v. Williams, 154 Fla. 191, 17 So.2d 98, 101-02 (1944)) (emphasis added in Banfield).
In the instant case, the lower court found that the wind-driven rain exclusion violated public policy because "the one and only reason" that FWUA was created by the legislature was "to give people windstorm coverage, in a place where windstorms, through hurricanes, come up reasonably often." However, there is nothing in the statutory language of 627.351(2), Florida Statutes (2004), the section that created FWUA,[2] which suggests that the legislature intended or mandated that wind-driven rain coverage must be included in all FWUA issued policies, or that there must exist as a matter of public policy in this state, seamless windstorm coverage for all types of windstorm-caused losses. We find that, in the absence of a clear public policy directive in the language of the statute, it is not our function to extend coverage for wind-driven rain damages to those whose insurance policies exclude such coverage. See Campbell v. Kessler, 848 So.2d 369, 371 (Fla. 4th DCA 2003) (noting that courts have no authority to interpret a statute in such a way as to extend its express terms or its reasonable and obvious implications). In fact, 627.4025(2)(a), Florida Statutes (2004) seems to contemplate a wind-driven rain exclusion, by providing that:
"Hurricane coverage" is coverage for loss or damage caused by the peril of windstorm during a hurricane. The term includes ensuing damage to the interior of a building, or to property inside a building, caused by rain, snow, sleet, hail, sand, or dust if the direct force of the windstorm first damages the building, causing an opening through which rain, snow, sleet, hail, sand, or dust enters and causes damage.

(emphasis added). Accordingly, we conclude that FWUA's wind-driven rain exclusion is not void as against public policy, and we reverse the summary judgment entered against FWUA in favor of the Gajwanis.
Reversed and remanded with instructions to enter judgment in favor of FWUA. Cross-appeal dismissed.
NOTES
[1] The Gajwanis argue that there can be no gap in their windstorm coverage so that either FWUA or Lexington must cover their wind-driven rain damage. If we agreed with that argument, we might also agree that the judgments would be inherently related, because the outcome of one judgment would necessarily depend upon the outcome of the other. However, as explained below, we reject the argument that there can be no gap in the Gajwanis' windstorm coverage.
[2] The section sets forth a framework to provide windstorm coverage to those "who in good faith are entitled to, but are unable to procure, such coverage through ordinary means...." 627.351(2), Florida Statutes (2004).