[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13020
Non-Argument Calendar
_____

D.C. Docket No. 3:14-cv-00031-MMH-JRK

DIVINE MOTEL GROUP, LLC,
d.b.a. Royal Inn,

Plaintiff-Appellant,

versus

ROCKHILL INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 19, 2016)

Before MARCUS, WILLIAM PRYOR, and FAY, Circuit Judges.

PER CURIAM:

Divine Motel Group, LLC ("Divine") appeals the district court's grant of

Rockhill Insurance Company's ("Rockhill") motion for summary judgment on

Divine's complaint raising one count of breach of contract. On appeal, Divine

argues that the district court (1) misinterpreted its insurance contract, and (2) erred by discounting its proffered evidence.  After careful review, we affirm.

## A.

The relevant factual background is this.  On June 20, 2012, Divine purchased the Royal Inn, a two-building property in Live Oak, Florida.  The property had previously been run as a motel, until the previous owner defaulted on its mortgage and then ceased operations in November 2011.  Rockhill issued an insurance policy to Divine, insuring the Royal Inn against the risk of physical loss for the period from June 20, 2012, through June 20, 2013.  The policy contained a coverage exclusion for rain damage to the building interiors ("the interior-rain-damage exclusion"), which said:  "[Rockhill] will not pay for loss of or damage to . . . [t]he interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, . . . whether driven by wind or not."  The policy contained an exception to this exclusion, providing that Rockhill would pay for damage to the interiors caused by rain if "[t]he building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain . . . enters."  The policy listed "windstorm" as a covered cause of loss.

On June 25, 2012, Tropical Storm Debby struck the Live Oak area.  During the storm, a significant amount of rainwater entered the Royal Inn buildings,

causing damage to the carpeting, drywall, and furnishings. Divine filed a claim under the insurance policy, which Rockhill denied based on the interior-rain-damage exclusion. Divine then sued Rockhill for breach of contract in state court, and Rockhill removed the case to federal district court. In district court, Divine argued that the exception to the interior-rain-damage exclusion applied because rainwater from Tropical Storm Debby entered the Royal Inn through portions of the roofs and walls that had been damaged by the storm. Rockhill moved for summary judgment, which the district court granted, concluding that Divine failed to proffer sufficient evidence for a reasonable jury to conclude that the exception applied. Divine filed this timely appeal.

### B.

We review a district court order granting summary judgment de novo, applying the same legal standard as the district court. Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1236 (11th Cir. 2003). We also review de novo legal questions, including a district court's interpretation of an insurance contract. Stephens v. Mid-Continent Cas. Co., 749 F.3d 1318, 1321 (11th Cir. 2014).

At the summary-judgment stage, we view the material presented and draw all factual inferences in the light most favorable to the nonmoving party. Animal Legal Def. Fund v. U.S. Dep't of Agric., 789 F.3d 1206, 1213-14 (11th Cir. 2015). Summary judgment is appropriate if the movant demonstrates that "there is no

3

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law applicable to the case determines which facts are material. United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991).

If the burden of proof is on the nonmovant, the movant must either: (1) demonstrate that the nonmovant has failed to proffer sufficient evidence to support an essential element of its case; or (2) proffer affirmative evidence demonstrating that the nonmovant will be unable to prove an essential element at trial. Id. at 1437-38. If the movant demonstrates the absence of a genuine factual dispute by either method, the burden then shifts to the nonmovant, which must show that a genuine issue remains for trial. Id. at 1438. To discharge this burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (quotation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and the moving party is entitled to summary judgment. Id. (quotations omitted). "An issue is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" Baloco v. Drummond Co., Inc., 767 F.3d 1229, 1246 (11th Cir. 2014) (quotation omitted), cert. denied, 136 S. Ct. 410 (2015). In other words, "[a] mere scintilla of evidence in support of

4

the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the [nonmoving] party." Id.

C.

This diversity case arises in Florida, and it is undisputed that the substantive law of Florida applies. Under Florida law, courts must construe insurance policies according to their plain meaning and resolve ambiguities in favor of the insured. Intervest Constr. of Jax, Inc. v. Gen. Fid. Ins. Co., 133 So. 3d 494, 497 (Fla. 2014). However, the insured has the burden to prove its claim is covered under the policy. E. Fla. Hauling, Inc. v. Lexington Ins. Co., 913 So. 2d 673, 678 (Fla. 3d Dist. Ct. App. 2005). Where, as here, the policy is an "all-risk" policy, "recovery . . . will as a rule be allowed for all fortuitous losses not resulting from misconduct or fraud unless the policy contains a specific provision expressly excluding the loss from coverage." Phoenix Ins. Co. v. Branch, 234 So. 2d 396, 398 (Fla. 4th Dist. Ct. App. 1970). Once the insured establishes "a loss apparently within the terms of the policy," the burden shifts to the insurer to prove an exclusion applies. Id. If an exception to the exclusion exists, the burden shifts back to the insured to prove the exception applies. E. Fla. Hauling, 913 So. 2d at 678; see LaFarge Corp. v. Travelers Indem. Co., 118 F.3d 1511, 1516 (11th Cir. 1997).

The operative issue in this case is whether Divine satisfied its burden -- at the summary-judgment stage -- to prove that the exception to the interior-rain-damage exclusion applied, by showing that Tropical Storm Debby damaged parts of the Royal Inn's roofs or walls through which rainwater entered.

## D.

Divine first argues that the district court erred by relying on Florida Windstorm Underwriting v. Gajwani, 934 So. 2d 501 (Fla. 3d Dist. Ct. App. 2005), and requiring it to prove that wind from Tropical Storm Debby created an "opening" in the Royal Inn's roofs or walls through which rainwater entered. Divine contends that, unlike in the policy at issue in Gajwani,[1] the exception in its insurance policy requires only "damage" to the roof or walls through which rain enters, not an "opening." Divine maintains that the deposition testimony of structural engineer Michael Linehan, who performed a cause-and-origin analysis of the rain damage for Rockhill, demonstrated that rainwater entered the Royal Inn through damage to the walls.

---

[1] The policy in Gajwani stated:

> We will not pay for loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain . . . whether driven by windstorm or not, unless the direct force of Hurricane, other Wind, or Hail damages the building or structure causing an opening in the roof or wall and the rain . . . enters through this opening.

934 So. 2d at 505-06.

6

Linehan performed a visual assessment of the property on July 12, 2012 -- about two weeks after the storm -- and he issued his cause-and-origin report about a month and a half later, on August 28, 2012.  In his report, Linehan identified the two buildings making up the Royal Inn as Building A and Building B.  He concluded that rainwater from Tropical Storm Debby entered both buildings through gaps under the exterior entry doors and sliding glass doors of the individual room units.  He opined that rainwater also entered Building B via "[l]eaks through the exterior two-story south concrete masonry unit (CMU) wall as a result of a temporary overwhelming and saturation of the referenced CMU wall components in response to wind-driven rain with Tropical Storm Debby."  Linehan explained that concrete block walls like Building B's south CMU wall:

> [are made of] cementitious material, so they . . . absorb moisture.  It's considered a mass wall type system.  So even if it's covered with cladding, like stucco, which is also cementitious, it is very normal for water to be absorbed and then dry out over time.

> That does not typically create a problem to the interior finishes because the mass of the wall is so great that water will typically not penetrate through the depth of the cladding and the complete width of the wall to negatively affect the interior finishes.

> In this case, Tropical Storm Debby was a severe rain event and there [were] also other issues independent of simply having a mass wall. There are cracks in the wall.  There were other factors where water could have entered because of the cracks or deficient waterproofing.

> But, in general, it was such a severe rain event that I do believe it was possible water could have seeped all the way through the block wall without these other issues.

7

Divine focuses on Linehan's statement that heavy rains from Tropical Storm Debby caused temporary saturation of Building B's south CMU wall. It contends that the saturation constituted "damage" through which the rainwater entered. However, Divine has not pointed to any evidence that the CMU wall was, in fact, damaged during the storm. Linehan testified that it is normal for concrete block walls to absorb water and that Building B's south CMU wall "temporarily" became saturated during the storm so that rainwater likely seeped through it into the interior of the building. Linehan's testimony indicates that the wall functioned as it was designed to function and, because of the quantity of rain that fell during Tropical Storm Debby, some rainwater penetrated into the interior of Building B. Divine has not pointed to any evidence indicating the wall was not able to "dry out over time" -- as Linehan testified these walls are designed to do -- or that Tropical Storm Debby otherwise caused damage to the wall through which the rainwater entered. Accordingly, the district court did not err in rejecting Divine's argument that saturation of Building B's south CMU wall constituted "damage by a Covered Cause of Loss to [Royal Inn's] roof or walls through which the rain . . . enter[ed]."

## E.

Divine next argues that, even if an opening is required for the exception to apply, it proffered sufficient evidence to show that winds from Tropical Storm Debby created openings in the Royal Inn's roofs through which rainwater entered.

8

Divine relies on the deposition testimony of: (1) Rockhill's insurance adjuster, Brian O'Connor; (2) Linehan; and (3) Thomas Miller, an engineer Divine retained to perform a "water intrusion assessment."

O'Connor inspected the Royal Inn about a week after Tropical Storm Debby hit. During his inspection, O'Connor observed "three areas of the roof which were pulled up from the membrane." The areas consisted of "three strips measuring approximately six inches in width and varied in length from 5 feet to 8 feet." O'Connor could not tell if the strips had been damaged by wind from Tropical Storm Debby, nor could he tell if rainwater had entered through the strips. Consequently, Rockhill retained Linehan to conduct a cause-and-origin analysis.

Linehan concluded that rainwater did not enter Building B through the roof during Tropical Storm Debby. However, on Building A, Linehan observed "deteriorated sealants" and "unadhered, overlapped cap sheet of the modified bitumen roofing membrane" which, he concluded, allowed rain to enter during the storm. Linehan opined, however, that these openings existed prior to Tropical Storm Debby, and had not been created or even exacerbated by winds from the storm. He based this conclusion on the weathering patterns surrounding the openings and the "distinct lack of wind-related damage" to the roof as a whole, such as heavier patterns of damage to the edges of the roof, torn or missing portions of cap sheet, and missing or torn away gutters and downspouts.

9

During his deposition, Rockhill's counsel questioned Linehan about an appraisal of the Royal Inn, done in April 2012 -- nearly three months before Tropical Storm Debby hit the Live Oak area. The appraisal report concluded that:

> [T]he subject motel facility is in poor condition and several items of deferred maintenance and damage to the buildings were noted . . . . The exterior of the building requires painting and based on interior signs of roof leakage, the roofs either need to be repaired or replaced. Damage to the interior rooms of the facility noted included several holes in the drywall walls, damaged ceramic tile in the guest rooms, missing or damaged acoustical ceiling tiles, water damaged drywall ceilings, soiled carpets, and mildewed and damaged furniture.

Linehan testified that he had not been aware of the appraisal report at the time he conducted his cause-and-origin analysis, but the report supported his conclusions. In particular, the fact that the furniture was mildewed "strongly suggest[ed] a moisture problem," which was "consistent with [the] preexisting roof leaks . . . documented in [his] report."

Thomas Miller conducted his water intrusion assessment in March 2014, almost two years after Tropical Storm Debby. Based on his inspection and conversations with the property owner, Miller documented significant water damage to the interior of the Royal Inn, including the carpeting, ceiling, and drywall. He concluded, "within a reasonable professional probability," that water intrusion from Tropical Storm Debby was the cause of the damage. Miller testified that Divine did not ask him to determine whether Tropical Storm Debby had caused any wind damage to the roofs or walls of the Royal Inn buildings, and his

10

assessment report did not address that issue. However, Miller was aware of Linehan's August 28, 2012 report, which concluded that the buildings had not sustained any wind damage during the storm. Miller disagreed with Linehan's conclusion. He identified a photograph in Linehan's report, which he included in his own assessment report, depicting a breach in the roof about one square foot in size. Miller believed the breach could have been caused by winds from Tropical Storm Debby. He clarified, however, that he had not been asked to assess whether the buildings had sustained any wind damage, and he was "not saying that [the photo depicted] wind damage." He was "just saying [he couldn't] rule it out."

Divine maintains that the testimony of O'Connor, Linehan, and Miller created a genuine factual dispute about whether Tropical Storm Debby created openings in the Royal Inn's roofs through which rainwater entered. The district court rejected this argument. It concluded that Miller's statement that he could not rule out wind as a cause of the roof damage Linehan documented amounted to a mere scintilla of evidence, from which a reasonable jury could not conclude that Tropical Storm Debby, in fact, caused roof damage to the Royal Inn through which rainwater entered. The district court noted that Miller's statement concerning the cause of the roof damage was outside the scope of his investigation. The court also noted that Miller did not opine that wind had actually caused roof damage and he provided no analysis that contradicted Linehan's reasoning.

11

Divine argues that the district court erred in finding that its proffered evidence on the cause of the roof damage amounted to a mere scintilla that was insufficient to survive summary judgment. We disagree. While O'Connor, Linehan, and Miller all investigated the damage inflicted on the Royal Inn by Tropical Storm Debby, none of them came to the conclusion that the property sustained roof damage during the storm through which rainwater entered. O'Connor testified only that he observed three areas of the roof that could have been damaged by winds from Tropical Storm Debby, but he was unsure whether the damage pre-existed the storm. Linehan testified that winds from Tropical Storm Debby had not caused any roof damage at the Royal Inn and that the roof damage he observed pre-existed the storm. Miller, whom Divine retained to investigate water intrusion at the Royal Inn, did not form an opinion as to whether Tropical Storm Debby caused roof damage. He merely identified a photograph in Linehan's report depicting roof damage and stated -- without any supporting analysis -- that he could not rule out wind as a cause of the damage.

On this record -- which includes the pre-storm appraisal report noting the need for roof repairs and the presence of mildew on the Royal Inn's furniture -- we conclude that Miller's testimony failed to "do more than simply show that there is some metaphysical [possibility]" that Tropical Storm Debby damaged the Royal Inn's roofs. Scott, 550 U.S. at 380. Miller's testimony that he could not rule out

12

wind from Tropical Storm Debby as a cause of the roof damage depicted in one of Linehan's photos constituted "merely colorable" evidence that Tropical Storm Debby created openings in the Royal Inn's roofs through which rainwater entered. See Baloco, 767 F.3d at 1246. Accordingly, the district court correctly concluded that Miller's testimony amounted to a mere "scintilla" of evidence, which was insufficient to survive Rockhill's motion for summary judgment. See id.

Divine also argues that the district court erroneously resolved a credibility dispute between Linehan and Miller in favor of Rockhill. Again, we disagree. It's true that Miller's statement that he could not rule out wind from Tropical Storm Debby as a cause of damage to the Royal Inn's roofs was at odds with Linehan's expert opinion that the Royal Inn did not sustain any roof damage during the storm. However, as discussed above, Miller did not offer an opinion as to the cause of the roof damage and he did not testify that the damage was caused by the storm. The district court did not discredit Miller's testimony. Instead, the court found that the testimony was insufficient to prove that winds from Tropical Storm Debby did, in fact, cause roof damage through which rainwater entered. And as we've already concluded, the district court did not err in determining that Miller's testimony was insufficient to discharge Divine's burden at summary judgment to create a genuine factual dispute on this issue.

**AFFIRMED.**

13