[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11967
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cv-22254-FAM

THE S.O. BEACH CORP.,
LARIOS ON THE BEACH, INC.,

Plaintiffs-Appellants,

versus

GREAT AMERICAN INSURANCE COMPANY OF NEW YORK,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 31, 2019)

Before ED CARNES, Chief Judge, WILSON, and HULL, Circuit Judges.

PER CURIAM:

Plaintiffs S.O. Beach Corp. and Larios on the Beach, Inc. (we will collectively refer to them as "Larios" for ease of reference) appeal the district court's grant of summary judgment to defendant Great American Insurance Company of New York, the court's denial of Larios' motion to reconsider the summary judgment order, and the court's refusal to grant Larios leave to amend its complaint.

## I.

Larios owns and operates a building on Ocean Drive in Miami Beach, Florida. Sometime between March 4, 2013 and April 19, 2013, Larios discovered that parts of the first three floors of its building had caved in to varying degrees. The primary cause of this purported collapse,[1] Larios determined, was that a wooden support beam called a sill plate had severely rotted. When Larios examined the sill plate, it also found a broken pipe that was gushing water onto the sill plate; that gushing water was a cause of the sill plate's deterioration. Larios was forced to evacuate the building until it finished repairing the damage.

Before it finished the repairs, Larios submitted a coverage claim in May 2013 to its insurer, Great American. Larios had purchased a series of all-risk insurance policies from Great American to cover damages to the building. Each

---

[1] We use the term "purported collapse" because the parties disagree about the meaning of the term "collapse" as it is used in the insurance policy at issue.

2

policy covered a one-year time period, and the policy at issue in this case covered March 1, 2013 through March 1, 2014.

An all-risk insurance policy "provides coverage for all fortuitous loss or damage other than that resulting from willful misconduct or fraudulent acts" — "[u]nless the policy expressly excludes the loss from coverage." Fayad v. Clarendon Nat'l Ins. Co., 899 So. 2d 1082, 1085 (Fla. 2005); see also id. at 1086 ("Although the term 'all-risk' is afforded a broad, comprehensive meaning, an 'all-risk' policy is not an 'all loss' policy, and thus does not extend coverage for every conceivable loss.") (citation omitted).  Although the "Exclusions" section of the March 2013 policy generally excludes coverage for "Collapse," the "Additional Coverages" section provides coverage for damage "caused by collapse of a building or any part of a building that is insured" under the policy, so long as the "collapse" is caused by (as relevant here) a "specified cause of loss" or "decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse."  The "Additional Coverages" section defines "collapse" as "an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose."  (Emphasis added).  We will refer to these provisions as the collapse coverage provisions.

3

Similarly, the "Exclusions" section generally excludes coverage for "'fungus,' wet or dry rot or bacteria," but the "Additional Coverages" section of the policy includes limited coverage for "loss or damage by 'fungus,' wet or dry rot or bacteria" caused by a "specified cause of loss" or by "flood."  The policy defines "Specified Cause of Loss" to include (as relevant here) "water damage."  And for the purposes of that definition, the policy defines "water damage" as "accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam."  We will refer to these provisions as the rot coverage provisions.

Great American had not made a coverage decision on Larios' claim as of May 2017, so Larios filed a breach of contract action in Florida state court against Great American claiming coverage for the damage under the March 2013 policy.  Great American removed the action to the Southern District of Florida based on diversity jurisdiction.  It then moved for summary judgment and Larios moved for partial summary judgment.  After holding a hearing on the motions, the district court granted Great American's motion and denied Larios' motion.  In doing so, the court also denied what it construed as a motion for leave to amend the complaint from Larios.  Larios filed a motion to reconsider the summary judgment order, which the court summarily denied.  This is Larios' appeal.

4

II.

We review de novo a district court's grant of summary judgment. Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1243 (11th Cir. 2004). A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one that 'might affect the outcome of the suit under the governing law.'" Furcron v. Mail Ctrs. Plus, LLC, 843 F.3d 1295, 1303 (11th Cir. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)). And a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510.

We review both a denial of a motion to reconsider summary judgment and a denial of leave to amend a complaint for abuse of discretion. See Woldeab v. Dekalb Cty. Bd. of Educ., 885 F.3d 1289, 1291 (11th Cir. 2018); Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000).

III.

Larios offers three contentions on appeal, one substantive and two procedural. Its substantive contention is that Great American is not entitled to summary judgment on the issue of whether the damage caused by the purported collapse is covered under the collapse coverage provisions of the policy. Larios'

5

first procedural contention is that the issue of rot coverage under the policy was not properly before the district court on summary judgment and, as a result, the court erred both by granting Great American total summary judgment and by denying Larios' motion to reconsider that part of its summary judgment order. Larios' second procedural contention is that the district court abused its discretion by denying Larios leave to amend its complaint after Great American filed its motion for summary judgment. We address each contention in turn.

A.

Under Florida law, "an insured claiming under an all-risks policy has the burden of proving that the insured property suffered a loss while the policy was in effect. The burden then shifts to the insurer to prove that the cause of the loss was excluded from coverage under the policy's terms." Jones v. Federated Nat'l Ins. Co., 235 So. 3d 936, 941 (Fla. 4th DCA 2018) (quotation marks omitted). If the insurer carries that burden, then the insured must prove that an exception to that exclusion applies. See Fla. Windstorm Underwriting v. Gajwani, 934 So. 2d 501, 506 (Fla. 3d DCA 2005).

There is no dispute that Larios carried its initial burden of showing that a loss — the purported collapse — happened while the March 2013 policy was in effect. So the burden shifted to Great American to prove that the cause of the purported collapse was excluded under the terms of the policy.

6

Great American offered a variety of evidence to show that the purported collapse was not covered under the policy's collapse coverage provisions. It produced documentary evidence along with testimony from expert witnesses and fact witnesses showing that the purported collapse of Larios' building was gradual, not abrupt. Because the collapse coverage provisions provide coverage only for abrupt collapses, Great American's evidence showed that the purported collapse was not covered under those provisions and thus was subject to the policy's general exclusion for damages caused by collapse.

So the burden shifted back to Larios. The district court found that Larios failed to offer evidence that the purported collapse was abrupt and failed to rebut Great American's evidence to the contrary, which meant that Larios failed to offer evidence of a "collapse" and thus was not entitled to collapse coverage.

Larios argues that because the collapse coverage provisions are ambiguous and because, under Florida law, "[a]mbiguous policy provisions are interpreted liberally in favor of the insured," Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000), we should effectively excise the abrupt requirement from the policy's collapse coverage provisions. The reason the collapse coverage provisions are ambiguous, according to Larios, is that the policy defines a collapse as abrupt but also expressly includes gradual decay as a potential cause of a covered collapse. Larios describes this as "a conflict between an 'abrupt' collapse,

7

which implies a sudden event, and a collapse from 'decay,' which implies a deterioration over time." That conflict, Larios asserts, makes the collapse coverage provisions ambiguous, and we should resolve that ambiguity by not applying the abrupt requirement when determining whether the damage caused by the purported collapse is covered under the policy.

But there is no conflict between explicitly covering collapses that result from a gradual cause like decay and limiting coverage to collapses that are abrupt. Decay is just one of over a dozen covered causes listed in the policy's collapse coverage provisions. Some of those causes are abrupt, like "lightning" or an "explosion." Others are gradual, like "decay" or "water damage." But regardless of whether the cause of a collapse was gradual or abrupt, the collapse itself is covered only if it was abrupt. We see no contradiction because we reject the assumption underlying Larios' argument: that abrupt collapses result only from abrupt causes and not from gradual causes. To the contrary, it is easy to find examples of abrupt collapses resulting from a gradual cause like decay. See, e.g., Gaia Pianigiani, Elisabetta Povoledo and Richard Pérez-Peña, Corrosion at 'Unthinkable Pace' Before Italy Bridge's Deadly Fall, N.Y. Times, Aug. 15, 2018, at A1. As a result, we reject Larios' assertion that the collapse coverage provisions are ambiguous on this point.

8

Because the collapse coverage provisions are not ambiguous, we "must interpret [those provisions] in accordance with the plain meaning of the language used so as to give effect to the policy as it was written." Travelers Indem. Co. v. PCR Inc., 889 So. 2d 779, 785 (Fla. 2004). That means the damage caused by the purported collapse is covered only if the purported collapse was abrupt.

Because Larios' collapse coverage arguments were apparently contingent upon the abrupt requirement not applying, Larios failed to rebut Great American's evidence that the purported collapse was gradual, and Larios did not identify any evidence that would allow a reasonable factfinder to conclude that the purported collapse was abrupt. In fact, it is not clear from the record when exactly the purported collapse occurred. Larios' briefing narrows the timeframe to sometime between March 14, 2013, and April 19, 2013. Based on that timeframe and without additional evidence, a reasonable factfinder could only speculate as to exactly how long the purported collapse took and thus whether it was abrupt (taking only seconds or maybe minutes) or gradual (taking days, weeks, or more than a month). That is not enough to avoid summary judgment for Great American on this issue. See Melton v. Abston, 841 F.3d 1207, 1219 (11th Cir. 2016) (per curiam) ("Inferences based on speculation and a mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment.") (quotation marks omitted).

9

B.

The district court's summary judgment order was not limited to the issue of collapse coverage. Instead, the court granted total summary judgment to Great American. Even though the court did not explicitly address the rot coverage provisions, the court's grant of total summary judgment made it clear that the court found Larios was not entitled to coverage under those provisions or any other part of the policy.

Larios contends that the court's summary judgment order was overbroad. Specifically, it argues that the court erred — as a matter of procedure — by granting summary judgment to Great American on the issue of whether any of the damage to its building was covered under the rot coverage provisions of the policy. (The district court did not mention those provisions in its summary judgment order.) Larios also argues that the court "compounded the error" by denying Larios' motion to reconsider the court's summary judgment order.

According to Larios, the issue of whether it was entitled to coverage under the rot coverage provisions was not properly before the district court on summary judgment. Larios asserts that it did not have notice of the rot coverage issue and thus did not have an opportunity to address it because Great American did not seek summary judgment on that issue and the court did not give the parties the requisite notice to allow the court to address the issue sua sponte, see Fed. R. Civ. P. 56(f).

10

But Great American did raise the rot coverage issue in its motion for summary judgment. It raised the issue generally by moving for total (not partial) summary judgment. And it raised the issue specifically by devoting a section of its motion, on pages 16–19,[2] to the policy's general exclusion of coverage for damages caused by "'fungus,' wet or dry rot or bacteria." Great American acknowledged, in footnote 13 on page 17, the rot coverage provisions that Larios focuses on. But on page 19, Great American clearly implied that any rot damage Larios suffered was caused by "the general humidity indigenous to Miami Beach," not by a "'specified cause of loss' other than fire or lightning," such as water damage, or by "flood." Rot damage caused by humidity is not covered under the rot coverage provisions, so Great American clearly implied that any rot damage Larios suffered was not covered under the rot coverage provisions but instead fell under the policy's general exclusion of coverage for damage caused by "'fungus,' wet or dry rot or bacteria."

Larios now argues that section of Great American's summary judgment motion was not enough to move for summary judgment on the issue of rot coverage. But it was enough to prompt Larios to address the issue on pages 2 and 10 of its response to Great American's motion. There, Larios interpreted that

_____

[2] The page numbers in Great American's summary judgment motion and Larios' response to that motion refer to the electronic screen page number shown at the top of each page by the Court's CM/ECF software.

11

section of Great American's motion as "conced[ing] coverage exists under the

Limited Coverage for 'Fungus,' Wet Rot, Dry Rot, and Bacteria." (Great

American, in its reply, denied making such a concession.) That purported

concession, Larios argued, "precludes summary judgment in [Great American's]

favor."

Because Larios addressed the rot coverage issue in its summary judgment

briefing, we reject its argument that it did not have notice or a chance to be heard

on the issue. We also reject Larios' contention that the rot coverage issue was not

properly before the district court when the court granted total summary judgment

to Great American. And because that contention was the only part of Larios'

motion to reconsider the summary judgment order that Larios has raised on

appeal,[3] we hold that the district court did not abuse its discretion by summarily

denying Larios' motion to reconsider.

We have not addressed the merits of whether Larios' loss was covered under

the rot coverage provisions of the policy. That is because Larios does not address

the merits of that question in its briefing to this Court and instead focuses purely on

---

[3] In its motion to reconsider, Larios also contended that it had newly discovered evidence establishing that the purported collapse happened on January 2, 2013. Larios has not raised that issue on appeal, so we consider it abandoned. See AT&T Broadband v. Tech Commc'ns, Inc., 381 F.3d 1309, 1320 n.14 (11th Cir. 2004) ("Issues not raised on appeal are considered abandoned.").

12

its procedural argument.[4]  Larios thus waived any merits arguments it may have on the rot coverage issue for the purposes of this appeal.  See Cont'l Tech. Servs., Inc. v. Rockwell Int'l Corp., 927 F.2d 1198, 1199 (11th Cir. 1991) (per curiam) ("An argument not made is waived . . . .").

## C.

That leaves the district court's denial of leave for Larios to amend its complaint.  That complaint mentions only one insurance policy:  "Policy number MAC0479038-00, with effective dates from March 1, 2013 through March 1, 2014."  Great American noted as much in its motion for summary judgment:  "[A]lthough Great American issued coverage to Plaintiffs for several previous policy periods, Plaintiffs have only sought coverage in this lawsuit under the Policy issued for the one year period commencing on March 1, 2013."

In its response to Great American's motion for summary judgment, Larios indicated in a footnote that it would "amend the Complaint to conform to the evidence" if the district court "determine[d] that coverage exists under the previous policies issued by Great American, or the facts adduced at trial show[ed] that a

---

[4] According to Larios, its "potential arguments" on the merits are "speculative" because those arguments "will necessarily be based on the currently unknown grounds [Great American] may raise if [Great American] chooses to move for summary judgment on Rot Coverage."  Similarly, Larios claims it cannot know what evidence to introduce because its evidentiary submission "depends on the arguments [Great American] makes and the evidence [Great American] relies on."  But Larios did not need to speculate because Great American did move for summary judgment on the rot coverage issue.

13

prior Great American [policy] was implicated." During the summary judgment hearing, the district court described that footnote as "kind of like a pseudo motion," and Larios called the footnote an "[o]re tenus" motion.[5] Larios also asserts in its appellate briefing that it "made repeated ore tenus requests to amend at the summary judgment hearing."

In its summary judgment order, the district court denied Larios' "delayed, conditional request for leave to amend its complaint," which it deemed futile. Larios appeals that ruling, arguing that the district court abused its discretion by not giving Larios leave to amend its complaint at the summary judgment stage.

We disagree. First, the footnote in Larios' response brief was not a proper motion to amend. White v. Beltram Edge Tool Supply, Inc., 789 F.3d 1188, 1200 (11th Cir. 2015) ("[P]laintiffs may not raise new claims at the summary judgment stage. At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint . . . . A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.") (citations and quotation marks omitted). Second, even if Larios had moved for leave to amend at the summary judgment hearing (the transcript is less than clear on this point), a district court need not allow a plaintiff to amend its complaint as far into

---

[5] An "ore tenus motion" is an oral motion. See Ore Tenus, Black's Law Dictionary (10th ed. 2014). Of course, a footnote in a brief is not an oral motion.

14

the proceedings as a summary judgment hearing.  Cf. Gordon v. Terry, 684 F.2d 736, 739 (11th Cir. 1982) (affirming a district court's denial of a motion to amend, in part because the motion was filed "[t]he day before the District Court's scheduled summary judgment hearing").  So the district court did not abuse its discretion by denying Larios leave to amend.

**AFFIRMED.**

15